TIMOTHY CRONIN AND MARGARET CRONIN v. JOHN GORE.

*Ejectment—Boundary—Estoppel.*

The estoppel from disputing a boundary arises merely from allowing the adjacent owner to make improvements, so long as neither has supposed the boundary to be wrong.

Unless the attempt to settle a doubtful boundary is honestly made in view of a question about it, the statute of frauds will prevent mere acquiescence in the boundary from operating as an estoppel.

A surveyor's determination of a boundary is not final.

All bounds and starting points are questions of fact to be fixed by testimony.

Where both parties in ejectment claim title under the same person, and the deed to one refers for boundaries to that made to the other, title need not be shown back of the common grantor.

Error to Kent. Submitted Jan. 25. Decided Feb. 1.

EJECTMENT. Defendants bring error.

*Miller & Voorheis* for plaintiffs in error. Where adjoining proprietors agree on a dividing line, or where one fixes it and marks it by visible monuments and the other by unequivocal acts or acquiescence indicates that he assents to it, each is estopped from afterwards claiming to the other's damage that it is not the true boundary. *Rockwell v. Adams,* 6 Wend., 467; *McCormick v. Barnum,* 10 Wend., 105; *Dibble v. Rogers,* 13 Wend., 536; *Kellogg v. Smith,* 7 Cush., 375; *Chew v. Morton,* 10 Watts, 321; *Lindsay v. Springer,* 4 Har. (Del.), 547; *Gilchrist v. McGee,* 9 Yerg., 455; *Willard v. Bickford,* 29 N. H., 471; *Rangely v. Spring,* 28 Me., 127; *Taylor v. Zepp,* 14 Mo., 482; *Missouri v. Iowa,* 7 How., 660; *Boyd v. Graves,* 4 Wheat., 513; *Houston v. Matthews,* 1 Yerg., 116; *Nichol v. Lytle,* 4 Yerg., 456; *Yarborough v. Abernethy,* 1 Meigs, 413; *Gove v. White,* 23 Wis., 282; *Spiller v. Scribner,* 36 Vt., 245; *Halloran v. Whitcomb,* 43 Vt., 306; *Jackson v. Van Corlaer,* 11 Johns., 123; *Merriweather v. Larmon,* 3 Sneed, 447.

*Andrew T. McReynolds* for defendant in error.   A boundary cannot be fixed by mere acquiescence unless the acquiescence continues long enough to bar an action for the recovery of realty.   See *Jackson v. Bowen*, 1 Cai., 358; *Jackson v. Dysling*, 2 Cai., 198; *Jackson v. Vedder*, 3 Johns., 8; *Jackson v. Dieffendorf*, id., 269; *Jackson v. M'Call*, 10 Johns., 377; *Smith v. Hamilton*, 20 Mich., 433; *Kip v. Norton*, 12 Wend., 127; *Adams v. Rockwell*, 16 Wend., 285.

CAMPBELL, C. J.   Gore brought ejectment and recovered a strip of land forty-four and a half feet wide, as included in a grant to himself of a tract of four acres, which by a surveyor's error had been laid out that much narrower than was correct.

The proof showed a purchase by Gore of David Stewart in November, 1865, of four acres, described as follows: "Beginning at the southwest corner of said west half of the southeast quarter of section twenty (20), running thence north on the quarter line to south line of land owned and occupied by the Detroit & Milwaukee Railroad Company, thence easterly along the south line of said railroad company's line far enough to make four acres, thence south parallel to the said quarter line to the south line of said section twenty (20), thence west along said south line of said section to place of beginning."

Immediately on the execution of this deed the land was surveyed by Mr. Coffinberry, who found the quarter post from the government surveys and ran the line northward to the fence maintained by the railroad, which is now claimed to have been set between twelve and thirteen feet too far north.   Gore set his east fence on the line as surveyed by Coffinberry.

In May, 1866, one Sullivan purchased two acres from Stewart, with boundaries beginning "at the southeast corner of the land lately sold to John Gore," and running north to the railroad line, following his east line. Sullivan employed a surveyor named Pettibone to survey his tract.   Pettibone's survey is not produced or described,

and Pettibone himself was not sworn. The only testimony found is in Gore's cross-examination, which states that Pettibone, not knowing the description of Gore's land, the latter gave him his deed to guide him, which he professed to follow, and that Gore showed Pettibone where Coffinberry had set his line, which Pettibone appeared to accept as correct, and made his survey, as Gore supposed, on that assumption. Just how he set Sullivan's other lines is not shown.

Subsequently, in 1869, Sullivan sold the south quarter of his two acres to Mrs. Cronin, one of the plaintiffs in error, who has since occupied and graded and planted her land with trees. She also set a drain, which has since been taken up by her, and built a house which she has removed. Her improvements were estimated and allowed her by the jury.

There were never any dealings between Gore and either of the other parties except in regard to keeping the fence in repair, Sullivan taking the north half and Gore the rest.

Just before the beginning of this suit, some one connected with Mr. Skeels, the county surveyor, who was running some lines in the neighborhood, told Gore there had been a mistake in his original survey. The testimony is blind on this subject, but the result was that Skeels made a survey which assumed the railroad fence was too far north, and by moving Gore's north line southward, he made the easterly boundary run over forty-four and a half feet upon Mrs. Cronin's occupancy. Hence this litigation.

Assuming for the present that Skeels is right, the question was presented whether Gore was not estopped from disputing the old boundary. A charge was asked and refused which asserted "that when the division line of lands has been located and agreed upon, or when the plaintiff has silently looked on and seen the defendant doing acts, making improvements, and subjecting himself

to expense in relation to the land on the opposite side of the line, which he would not have done had the line not been so located, and which would be a damage to him, the plaintiff is not entitled to recover."

The court held that the testimony showed no case of estoppel.

Upon this point both parties as well as the court relied on certain decisions of this court in *Smith v. Hamilton*, 20 Mich., 433; *Joyce v. Williams*, 26 Mich., 332; and *Stewart v. Carleton*, 31 Mich., 270.

In each one of these cases the line of division between the adjoining owners was distinctly fixed on the grounds under deliberate mutual action had for the express purpose of fixing it. Neither of them rested on mere acquiescence. The parties were acting with particular reference to determining their respective lines and for that specific purpose. And it was held that where such deliberate dealings were had between the parties, the case rested on grounds similar to those which authorize the specific performance of parol agreements actually executed. It was held also that unless the transaction amounted to an honest attempt in case of question, to settle a doubtful line, the statute of frauds would apply to prevent the enforcement of an estoppel.

In the present case the location of Gore's eastern line, in the first place, if wrong, was a surveyor's mistake, which certainly could not in any way estop either Gore or Stewart, his grantor, who had sold him four acres, and would have no right to withhold any portion of his grant. This is not pretended.

Gore and Sullivan had no dealings whatever to fix the boundary. Sullivan, so far as the testimony shows, had no purpose of doing anything more than hiring a surveyor to locate his lands in the usual way. The surveyor took Gore's deed, which Gore himself on request, gave him as a guide. If Pettibone, the surveyor, made an error, it was in not using the means which he was bound and expected to use, and in saving himself trouble

by assuming the correctness of another surveyor's line which Gore simply pointed out in good faith, but the correctness of which he was not asked to vouch, and did not vouch.

No other act was done by anybody beyond continuing in possession in the usual way and keeping up the division fences.

There is no difference between this case and most cases where parties occupy and define their possession under mutual mistake, neither doubting his own or his neighbor's rights, and neither attempting to either fix or disturb a line as either a probable or possible ground of controversy. In a great proportion of ejectment suits parties have acted under similar errors. In such cases improvements not interfered with operate no estoppel, but when the possession has been kept up long enough, the statutes require them to be paid for as they were adjudged to be in this case. Estoppels when allowed must be based on something else than the silent permission of improvements by a party who has not acted in bad faith, or done any act which the other party had a right to regard as meant to govern his conduct.

In this case Sullivan acted on Pettibone's survey, which he himself procured to be made, and which he was willing to rely on. There is nothing in the record to show that Sullivan ever knew that Pettibone acted on any one's survey but his own, and as Pettibone's survey is not produced, there is no satisfactory evidence, if there is any evidence at all, to determine what it really was, beyond such inferences as Gore drew, which may or may not have been correct.

If the case rested on this supposed estoppel, the judgment below could not be disturbed. But upon a careful review of the record, we think it erroneous on other grounds.

The case was put to the jury on a very distinct assumption that Coffinberry's survey was wrong. We

have found nothing in the record to warrant this assumption.

The deed from Stewart to Gore adopts for its northern boundary the south line of lands *owned and occupied* by the railroad, thus making the occupancy a material part of the description. This occupancy had continued for several years, and still continued as Coffinberry found it, marked by a fence. Stewart delivered the land and had it surveyed in accordance with this occupancy. Whether this would be conclusive or not we need not consider, because the record shows nothing to impeach its correctness, and it does show that the railroad authorities upon a question arising, distinctly recognized Gore's right up to the fence.

It was admitted on the opening of the trial that if the fence was the true line, Gore had all the land belonging to him; and we are inclined to think he had.

We have had occasion before, as we have now, to say that surveyors have no more authority than other men to determine boundaries on their own notions. All bounds and starting points are questions of fact, to be determined by testimony. Surveyors may or may not have in certain kinds of cases means of judgment not possessed by others. But the law cannot and does not make them arbiters of private rights. If the folly of permitting such assumptions needed any showing, it is abundantly supplied by this record, where Coffinberry seems to have been the only surveyor who followed the deed to Gore, and verified his points of departure. Pettibone, if the theory of the defense is true, acted on the faith of another man's survey, and Skeels has given no means of judging his data beyond the fact that he has not followed the line of fence of the railroad.

The diagram of his survey put in evidence does not show the position of Gore's southwest corner at all, and does not show whether it is bounded by the section line or corner at all. There is some reason to suspect that his measurements are from the road-sides, and not from

the proper boundaries. It is difficult to believe that a variance of two rods independent of the strip south of the railroad fence could have existed between the measurements of the two surveyors in so short a distance on the ground, if they both started from the same point. The evidence shows that half of the width of two roads, one west and one south, is to be deducted from Gore's four acres. If these roads are of the usual width, each of the strips is two rods wide, and if either was excluded by Skeels, the variance would probably about make up the difference between him and Coffinberry.

The lines of Skeel's survey are therefore left in great uncertainty. But as there is no evidence in the record showing any legal reason for rejecting the railroad fence as a boundary, the case was improperly presented on any theory. The circuit judge pointed out the existence of some error as evident, but neither party took any steps to explain it.

Inasmuch as all parties claim title through Stewart, and Sullivan's deed refers to that of Gore for boundaries, it was not necessary to show title back of the common grantor.

Judgment must be reversed and a new trial granted.

The other Justices concurred.