WATERVIEW ASSOCIATES, INC., *v.* LAWYERS
TITLE INSURANCE CORPORATION

1. JUDGMENT—SUMMARY JUDGMENT—MATERIAL FACT—COURT RULE.
    A summary judgment is improper when the pleadings and opposing affidavits reveal a genuine issue of material fact (GCR 1963, 117.2[3]).

2. INSURANCE—TITLE INSURANCE—SUMMARY JUDGMENT—ACCURATE SURVEY—QUESTION OF FACT.
    Summary judgment was improperly granted defendant title insurer even though the title insurance policy contained an

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Pleading §§ 340–343.
[2, 5, 6] 44 Am Jur 2d, Insurance §§ 1450–1452.
[3] 12 Am Jur 2d, Boundaries §§ 55–63.
[4] 12 Am Jur 2d, Boundaries § 102.

"accurate survey" exclusionary clause, plaintiff insured did not submit an approved survey, as required by the title insurer, plaintiff's title was defective and plaintiff's lack of title to the disputed land had been previously judicially determined where there was no evidence of what an accurate survey of the purchased premises would have revealed and the parties disputed what an accurate survey would have revealed, because a material issue of fact existed.

3. BOUNDARIES—SECTION LINES—LOCATION—QUESTION OF FACT.
   The question of the location of a section line or a starting point is one of fact for the jury and not one of theory to be determined finally upon the opinion of surveyors as experts.

4. BOUNDARIES—SURVEYOR'S OPINION.
   Surveyors have no more authority than other men to determine boundaries on their own notions; surveyors may or may not have in certain kinds of cases means of judgment not possessed by others, but the law cannot and does not make them arbiters of private rights.

5. INSURANCE—TITLE INSURANCE—ACCURATE SURVEY—BASIS OF SURVEY.
   The metes and bounds description of land in a title insurance policy is to be used as the basis of a survey to determine whether an accurate survey and inspection of the purchased premises, insured by defendant title insurer, would have revealed any defects in plaintiff insured's title.

6. INSURANCE—TITLE INSURANCE—ACCURATE SURVEY CLAUSE—BASIS OF SURVEY.
   Plaintiff whose title was insured by defendant title insurer will be entitled to recover for land covered by the insurance policy which was judicially determined not to belong to the plaintiff even though the title insurance policy contained an "accurate survey" exclusionary clause and plaintiff did not submit an accurate survey of the land as the policy required if the plaintiff can show that a survey based upon the metes and bounds description of the land found in the insurance policy would have indicated that plaintiff owned the questioned land.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 December 17, 1970, at Detroit. (Docket No. 8901.) Decided February 18, 1971. Leave to appeal denied April 23, 1971, 384 Mich 835.

Complaint by Waterview Associates, Inc., against Lawyers Title Insurance Corporation for breach of a title insurance contract. Summary judgment for defendant. Plaintiff appeals. Reversed and remanded for trial.

*Joseph E. Mihelich,* for plaintiff.

*Frank I. Kennedy,* for defendant.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and O'HARA,* JJ.

J. H. GILLIS, J.   This case requires construction of an exclusionary provision in a contract of title insurance. Schedule B of plaintiff insured's policy carries an indorsement which excludes from coverage loss or damage by reason of:

"any matters which would be disclosed by an accurate survey and inspection of the premises."

This is the so-called "correct survey" exclusion from coverage frequently found in policies of title insurance. See generally, 9 Appleman, Insurance Law & Practice (1970 Cum Supp), § 5209(a), p 11; 45 CJS, Insurance, § 882, p 949. It is on the basis of such an exclusion that the trial court dismissed, on defendant insurer's motion for summary judgment, plaintiff's suit on the contract of title insurance. Plaintiff appeals. We reverse and remand for trial.

At the outset we reiterate the controlling *desiderata* so frequently stated in our decisions, most recently in *Motor State Insurance Company* v. *Leonard* (1970), 27 Mich App 117, 118, 119:

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"Under GCR 1963, 117.2(3), a party may move for a summary judgment where there is no genuine issue as to any material fact. GCR 1963, 117.3, provides that a motion for a summary judgment based upon GCR 1963, 117.2(3), is to be supported by affidavits and that such affidavits, together with the pleadings, depositions, admissions and other documentary evidence, are to be considered by the trial court in ruling on the motion. The record below reveals a material issue of fact * * * .

* * *

"A summary judgment is improper when the pleadings and opposing affidavits reveal a genuine issue of material fact. *Tripp* v. *Dziwanoski* (1965), 375 Mich 619; *Sun Oil Company* v. *Rosborough* (1967), 6 Mich App 176. The summary judgment issued by the trial court is vacated and the case remanded for trial." .

This case requires a like disposition. As in *Motor State,* the record below reveals an unresolved material issue of fact which, by GCR 1963, 117.2(3), can only be resolved at trial.

Specifically, whether the quoted exclusionary clause applies in this case depends in turn on whether an accurate survey and inspection of the premises would have disclosed the defect, subsequently revealed, in plaintiff's title. This latter question remains unresolved. And, for reasons which follow, we hold (1) that contrary to the ruling of the trial judge, a factual dispute exists regarding what an accurate survey would have disclosed, and (2) on remand the question of what an accurate survey would have revealed and, in particular, whether such a survey would have disclosed the defect in plaintiff's title is to be governed by the metes and bounds description of the insured property as stated in the policy of title insurance.

# I

The pleadings, affidavits, and documents filed in this case establish that in April 1965, the plaintiff purchased property in Oakland County from Wangel Serbinoff and Vasilka Serbinoff on a land contract. The plaintiff had the property surveyed on July 29, 1965, by N. D. Alix, a registered civil engineer and land surveyor. Alix's survey was based upon the same metes and bounds description of the lot in question as appears on the deed of conveyance to plaintiff from the Serbinoffs. This deed was recorded on October 5, 1965. On the same date, a policy of title insurance was obtained from defendant, Lawyers Title. That policy describes the property insured by way of metes and bounds as follows:

"Land in the City of Keego Harbor, County of Oakland and State of Michigan, described as:

"Parcel of land in the Northeast 1/4 of Southeast 1/4 and Southeast 1/4 of Southeast 1/4 of Section 2, Town 2 North, Range 9 East, West Bloomfield Township, Oakland County, Michigan, more particularly described as follows: Beginning at the Southwest corner of Sawyer's Keego Harbor Subdivision, said point being the Northerly right of way line of Orchard Lake Road as it now exists; thence South 65 degrees 43 minutes West along the Northerly line of said Orchard Lake Road 509.42 feet; thence North 0 degrees 04 minutes West 411.07 feet; thence South 89 degrees 56 minutes West 33.00 feet; thence North 0 degrees 04 minutes West 303.83 feet; thence South 86 degrees 17 minutes East along the Southerly boundary of Sawyer's Keego Harbor Subdivision extended and said Southerly boundary 272.90 feet; thence South 24 degrees 51 minutes East along the boundary of said subdivision 537.43 feet to the point of beginning."

This description is the same as appears on the deed of conveyance. It also constituted the legal description on which Alix based his survey of July 29, 1965.

Immediately after purchase of the property, plaintiff Waterview began improving the lot and preparing it for use as a trailer park site. Plaintiff's improvement activities were conducted upon the entire lot as surveyed by Alix and as described in Waterview's deed and its policy of title insurance.

On June 30, 1966, however, Waterview was served with summons in a lawsuit in Oakland County Circuit Court in which it was named as defendant in a boundary dispute. This lawsuit was filed by the Pontiac Yacht Club, owners of the property adjoining Waterview's; at issue was the determination of the westerly boundary line between the parties' properties. On November 21, 1966, the Honorable William Beer ruled that the disputed dividing line between the Pontiac Yacht Club property and Waterview's property was the 1/8 quarter line of Section 2, Bloomfield Township, Oakland County. Judge Beer also ruled that this 1/8 line was a line first monumented by engineers for the City of Keego Harbor in the fall of 1966.[1]  As a result of Judge

---

[1] We quote in pertinent part the judgment of the court, Judge Beer, in Oakland Circuit Court No 26024, *Pontiac Yacht Club* v. *Wangel Serbinoff and Vasilka Serbinoff, and Waterview Associates, Inc.*:

"It is hereby ordered and adjudged that the boundary line between the property belonging to the plaintiff and the property owned by the defendants Wangel Serbinoff and Vasilka Serbinoff, and being purchased by the defendant Waterview Associates, Inc., is the 1/8 quarter of Section 2, Bloomfield Township, Oakland County, Michigan, which line the court determines to be a municipal boundary line between the Cities of Keego Harbor and Orchard Lake.

"It is further ordered and adjudged that the north-south 1/8 line dividing the east and west 1/2 of the southeast quarter of Section 2, is that line established by Spalding-DeDecker & Associates, Inc. of Birmingham, Michigan, engineers for the City of Keego Harbor, and which line was established in the fall of 1966.

"It is further ordered and adjudged that the 1/8 line established by Spalding-DeDecker & Associates, Inc., is that line which has been marked on the ground by permanent metal and concrete monuments."

Beer's rulings, Waterview was permanently enjoined from occupying any property located west of the 1/8 quarter line. Waterview was required to remove all improvements, equipment, and other personal property then located westerly of the newly-established boundary line.

The effect of Judge Beer's rulings was to deprive Waterview of several lineal feet of property it thought it owned which lay to the west of the new boundary line. This property originally bordered on a fence thought by Waterview to mark its western extremity. As a result of the boundary litigation, Waterview was required to remove and relocate this fence.

Waterview then filed the instant action in Macomb County Circuit Court claiming that Lawyers Title was required under the policy of insurance to compensate it for the loss of property suffered in the prior boundary litigation.[2] Plaintiff Waterview alleged in its complaint that the metes and bounds description found in the policy "included land west of said 1/8 line [the line established by Judge Beer] and up to the then existing fence on the property." This allegation was denied by Lawyers Title.

Lawyers Title affirmatively defended as follows:

"Defendant was not furnished with an accurate survey of the land described in its said policy, and the matters affecting the boundary or title to plaintiff's land which would have been disclosed by an accurate survey are therefore excluded from coverage by Schedule B of the policy, particularly by paragraph 3 thereof, and defendant is not liable therefor."

This defense was founded on an alleged failure on plaintiff's part to submit an approved survey of the

---

[2] In its bill of particulars, plaintiff alleged as damage a land loss of waterfront footage, lineal feet, 1/2 acre; a loss of seven lots; it also included, *inter alia*, the cost of new fence construction.

subject property to Lawyers Title before issuance of the final policy. Such submission is required as a condition of application for defendant's title insurance. The condition appears listed on the defendant corporation's standard application forms.[3] An owner may request issuance of a title policy without the "accurate survey" exclusion quoted above; however, he must first file an approved survey with defendant corporation.

Although the record is far from clear on the point,[4]

---

[3] We quote this condition as stated on the reverse side of the application form:

"All applications taken by this company are subject to the following conditions:

\* \* \*

"5. Applicant may request an owner's policy to be issued without one or more of the standard exceptions shown below at the applicable rate. An applicant requesting removal of standard exception '2' will be required to submit an approved survey of subject property prior to issuance of final policy.

"Standard exceptions: (owner's policy)

\* \* \*

"2. [A]ny matters which would be disclosed by an accurate survey and inspection of the premises."

[4] At this stage of the proceedings no proofs have been presented on this important question. Defendant's answer, as noted in the text above, merely *alleged* that no approved survey was filed with defendant Lawyers Title. However, at the hearing on defendant's motion for summary judgment, defendant's counsel, contrary to the allegations of defendant's answer, expressly noted on the record that: "Here is a certificate of survey that's in the file." It is clear that defense counsel's reference was to the survey of July 29 made by N. D. Alix at plaintiff's request; moreover, an annotation dated August 24, 1965, on defendant corporation's application form states: "Return abst left for ref. *also survey* & 1d contract." (Emphasis supplied.) At this same hearing, plaintiff's counsel was asked whether the Alix survey was presented to the defendant title corporation before issuance of the final policy. Plaintiff's counsel replied: "I do not have the answer to that, but it is our contention, your Honor, that \* \* \* the *description given to Lawyers Title was accurately located by* [the Alix survey], *and that description did show that we owned all of this frontage on Cass Lake, but it contained no reference to the 1/8 line."* (Emphasis supplied.)

On remand, if the proofs—as opposed to the allegations, claims, statements, speculations, and whatever of counsel at the hearing on the motion for summary judgment—establish that an approved survey was in fact submitted to Lawyers Title, what we hold concerning the exclusionary provision at issue is mere surplusage. For it would then be established that the exclusionary provision, as a defense,

plaintiff concedes for purposes of appellate review that no approved survey was filed nor was issuance of a policy without the exclusionary provision of Schedule B, paragraph 3, requested by plaintiff Waterview.

After filing its answer, including the affirmative defense of exclusion under the policy, defendant Lawyers Title then reiterated its contention, this time by way of a motion for summary judgment, that plaintiff's claim for damages "is expressly barred by the provisions of schedule B of said policy of title insurance". Defendant attached a copy of the judgment in Oakland Circuit Court, Judge Beer, No 26024, to its motion. It was defendant's position that the prior judgment conclusively established that an accurate survey would have disclosed the defect in plaintiff's title; and, as a result, defendant was not liable on the policy.

Plaintiff answered defendant's motion for summary judgment by alleging:

"The question of whether or not the matter would be disclosed by accurate survey and inspection of the premises is a fact in question to be determined since conflicting surveys were submitted to the Circuit Court in Oakland County being case # 26024."

would be inapplicable in this case. *Cf. Motor State Insurance Company v. Leonard* (1970), 27 Mich App 117.

Accordingly, we feel obligated to restate a plea often raised on appellate review by the reviewers themselves: *Proofs with concomitant facts—rather than the claims of opposing counsel—are required for anything approaching reasoned appellate review.* There is little use, indeed there is no use at all, for the all too frequently confessed: "I do not have the answer to that." We do not mean by this observation to criticize plaintiff's counsel. All that we wish to point out is that the instant case, again, provides an example of an all too summary dismissal of an otherwise meritorious suit. Let this case indicate to bench and bar alike that the observation, "I do not have the answer to that", may very well indicate that summary judgment on the basis of such confessed ignorance and on the tenuous foundation of speculation which generally follows is wholly inappropriate.

A hearing was then held on defendant's motion at which there followed an almost inscrutable sequence of claims, assertions, counter-assertions, and speculations on the part of both counsel—all without the rule-required affidavits. See GCR 1963, 117.3, and *Motor State Insurance Company* v. *Leonard, supra.* We quote representative samples:

"*Mr. Mihelich* [*plaintiff's counsel*] : Now, we have lost 30 feet of land that was insured by Lawyers Title, and we claim that they are liable under the terms of the policy because the legal description made no reference to the location of the 1/8 line, and the fact that as it turned out the 1/8 line was located east of our westerly property line is really inconsequential, * * * here all we have was a legal description given to Lawyers Title which they subsequently insured, and it was determined that that legal description was not inaccurate.

"Your Honor, the description was accurate and any survey—now here is another point—that any accurate survey based on the metes and bounds description furnished to Lawyers Title would have shown exactly the condition that existed before this lawsuit with the Pontiac Yacht Club, and therefore there was no way we could protect ourselves from this exclusion in the policy by furnishing an accurate survey, you see.

"*The Court:* No, I don't see.

\* \* \*

"*Mr. Mihelich:* My client wanted to be protected before we went ahead to get improvements to get a title insurance policy on that particular parcel of land. They were in possession of it * * * so after this legal description was plotted out by our engineer [Alix] we took it to Lawyers Title and we asked for title insurance on it, and title insurance was granted without making any reference to the location of the 1/8 line.

\* \* \*

"[I]n this instance it was simply metes and bounds description and they insured that metes and bound description and it was accurate, I mean insofar as locating our property along the lake, and we thought we bought 30 feet more frontage than we actually got, and we're out 30 feet and we have been damaged.

\* \* \*

"*The Court:* Well, I would have to say, wouldn't I, Judge Beer's decision, that there is some inaccuracy about the survey. It isn't an accurate survey. It is obviously wrong or he wouldn't have rendered the judgment, which I suppose has not been appealed from.

"*Mr. Mihelich:* It has not.

"*The Court:* It is a final judgment, so from that and the fact that a survey apparently was furnished by an engineer and is not accurate, it is not right. It is not true, and therefore under the provisions of the policy itself, I think you are automatically precluded from relying on the policy contract for relief.

"*Mr. Mihelich:* Well, your Honor, what happened to our 30 feet that they insured based on the legal description we gave them?

"*The Court:* That has no bearing on it, you see.

"*Mr. Mihelich:* Well, it's the crux of the case.

\* \* \*

"*Mr. Mihelich:* There is no proof that survey is inaccurate, your Honor.

"*The Court:* Except that Judge Beer says it is.

"*Mr. Mihelich:* He only determined the 1/8 line.

"*The Court:* He made no reference to the accuracy or inaccuracy of this survey? Well, he must have. You said you offered proof. You must have offered this.

"*Mr. Mihelich:* Your Honor, the—

"*The Court:* Even though the judgment said you offered no proof.

"*Mr. Mihelich:* The 1/8 line is shown on this survey, that is true, but this survey can be located

by going out into the field and if you go out into the field the entire frontage that we thought we bought is set forth in that survey.

*"The Court:* Well, then, why the judgment then?

*"Mr. Mihelich:* The relocated one 1/8 line which heretofore had not been located because there were no monuments.

\*   \*   \*

*"The Court:* Well, they must have been there all the time or they wouldn't—couldn't have located them. At least these are actual monuments, they are not oak trees or black walnut stumps like you and I have got to worry about tomorrow marked on the ground by permanent metal and concrete monuments.

*"Mr. Mihelich:* Those were subsequently placed there, but they were not there at the time we purchased this property.

*"The Court:* Well, I don't know. I don't know about that. I can only judge from this that they were there at the time he purchased the property and this was fundamental in the judge's findings. He certainly wouldn't refer to it if it were placed in there subsequently.

\*   \*   \*

*"Mr. Mihelich:* Your Honor, there is no proof in this record that the legal description that we gave to Lawyers Title for which they issued insurance was inaccurate in any respect whatsoever, and that is a question of fact which should be determined on a trial on the merits.

*"The Court:* Already determined, Mr. Mihelich. Already determined by Judge Beer, isn't it?

*"Mr. Mihelich:* No, he didn't determine, your Honor.

*"The Court:* Sure he did.

*"Mr. Mihelich:* Whether or not that survey was—

*"The Court:* Couldn't be accurate. One has got to be right and one is wrong.

"*Mr. Mihelich:* That survey doesn't purport to the 1/8 line.

"*The Court:* Doesn't make any difference.

"*Mr. Mihelich:* That's the crux of the case.

"*The Court:* I don't think that's the crux of the case. The question is whether it is an accurate survey and obviously it is not an accurate survey otherwise you wouldn't have the judgment rendered against it.

"*Mr. Mihelich:* Well—

"*The Court:* I think that's it and, of course, this particular case which apparently is on all fours with this  *  *  *  case that Mr. Kennedy [*defendant's counsel*] presents here definitely states that your rights are circumscribed by those contract provisions which I would have to agree with."

The case cited by defense counsel and considered dispositive by the trial court was *Kuhlman* v. *Title Insurance Company of Minnesota* (WD Mo, 1959), 177 F Supp 925. We shall treat that case momentarily. We pause, however, to make important threshold observations.

All too frequently, as this case demonstrates, a hearing on a motion for summary judgment becomes a forum for the unsupported assertions of opposing counsel. Nothing in the prior judgment attached to defendant's motion for summary judgment establishes—conclusively, collaterally, or otherwise—that an accurate survey of plaintiff's property based upon the metes and bounds description found in plaintiff's policy would have disclosed the defect complained of. The judgment itself says nothing about what an accurate survey of plaintiff's property would show. It merely fixes a disputed boundary line. Likewise, plaintiff's claim that an accurate survey, including Alix's survey, would have shown exactly the condition existing before the boundary

litigation is mere assertion, unsupported by competent proof.

We think it apparent in this case that the trial judge too readily accepted defendant's assertion that there existed no material issue of fact, rather than insisting upon the required proofs supporting such an assertion. What was done here in no way complies with the procedure detailed in *Motor State* and quoted *supra*. We remind the trial bench that before a party may successfully invoke GCR 1963, 117.2(3), there must be competent proof, rather than assertion, establishing no genuine issue of fact. See footnote 4, *supra*. Such is not the case here.

We are satisfied from the pleadings and other documentary evidence filed in this case that there exists a question of fact as to whether an accurate survey of plaintiff's property, as described in the policy of insurance, would have disclosed the loss in property eventually suffered by plaintiff Waterview. In this regard, it is significant, *cf. Motor State Insurance Company* v. *Leonard,* that questions of survey, including questions of what an accurate survey would disclose, are issues of fact for resolution by the trier. To this effect, see *Stewart* v. *Carleton* (1875), 31 Mich 270, headnote 3:

"The question of the location of a section line or a starting point is one of fact for the jury, and not one of theory, to be determined finally upon the opinion of surveyors as experts."

Accord, *Cronin* v. *Gore* (1878), 38 Mich 381, 386, *per* Mr. Chief Justice CAMPBELL:

"We have had occasion before, as we have now, to say that surveyors have no more authority than other men to determine boundaries on their own notions. All bounds and starting points are questions of fact, to be determined by testimony. Surveyors may or may not have in certain kinds of

cases means of judgment not possessed by others. But the law cannot and does not make them arbiters of private rights."

See also, *Bower* v. *Earl* (1869), 18 Mich 367; *Case* v. *Trapp* (1882), 49 Mich 59; *Gregory* v. *Knight* (1883), 50 Mich 61; *Van Der Groef* v. *Jones* (1895), 108 Mich 65; 4 Michigan Law & Practice, Boundaries, §§ 14, 15, pp 273, 274. Finally, see the especially relevant remarks of Mr. Chief Justice Cooley, "The Judicial Functions of Surveyors," 14 Surveying & Mapping 161, 163, 165 (1954).

As there exists an unresolved issue of fact, we vacate the summary judgment entered by the trial court and remand for trial.

## II

On remand, the trier of fact must determine whether—to quote the exclusionary clause here at issue—"an accurate survey and inspection of the premises" would have disclosed the defect in plaintiff's title. It is plaintiff insured's position that this question should be answered by reference to what such a survey, based on the metes and bounds description of the insured property as stated in the policy, would disclose. We quote plaintiff's brief:

"If it is determined by the trier of fact that an accurate survey based upon the metes and bounds description furnished to Lawyers Title would have shown exactly the condition that existed before the Oakland County lawsuit with the Pontiac Yacht Club, then the plaintiff appellant would have been unable to protect themselves from the exclusions in the policy."

Moreover, plaintiff contends that under such circumstances the exclusionary clause, together with the affirmative defense based thereon, would not bar recovery on the policy. We agree.

We hold that an "accurate survey" within the meaning of the exclusionary clause is one *based on the metes and bounds description of the property as stated in the policy of title insurance.* Accordingly, if, as plaintiff alleged in its complaint, such a survey would indicate that plaintiff Waterview owned the land later determined to belong to its neighbor, plaintiff would be entitled to recover.

Our construction of the "accurate survey" exclusion at issue in this case is in accord with like holdings in a number of cases construing similar exclusionary clauses. *Marandino* v. *The Lawyers' Title Insurance Corporation* (1931), 156 Va 696 (159 SE 181), is a leading case.

In *Marandino,* the policy described the insured property by metes and bounds as a lot at the northeast corner of 22nd and Broad Streets in the City of Richmond, as established by a city ordinance, and fronting on 22nd Street 38 feet, 5 inches. After purchase, it was discovered that a discrepancy in the line of Broad Street eliminated 5 feet, 3 inches from the 22nd Street front, as it was described in the policy. The insured brought suit against his title insurer for the loss of property and recovered on the policy, notwithstanding a contention that an accurate survey would have disclosed the shortage. The reasoning of the court is equally applicable here (156 Va pp 700, 703, 704 [159 SE pp 182, 183, 184]):

"In approaching this question, it appears to be everywhere held that such policies are subject to the rules generally applicable to contracts of insurance, among which are, that being drawn by the company doubtful questions should generally be decided in favor of the insured, and that exceptions and reservations are strictly construed. The language is construed in accordance with the common understanding of the words used.

* * *

"It is argued for the company, and seems to have been held by the trial court in this case, that inasmuch as this ordinance disclosed the defect, and the company disclosed the ordinance, therefore the plaintiff has received the property she bought. We think this is too strict a construction. She was justified in concluding that, notwithstanding the fact that the ordinance established the line of Broad street, it was, nevertheless, true that the lot which she was buying still fronted 38 feet, 5 inches on Twenty-second street, for so the property is described in her policy. She had the right to rely upon that description.

\* \* \*

"An Illinois case, *Chicago Real Estate Board* v. *Mullenbach* (1913), 184 Ill App 437, 438, seems quite applicable to this case. There a title guarantee policy tendered to the purchaser was made subject to questions of survey, and this was held wholly immaterial where the premises as described in the contract have an actual existence in fact within the boundary lines as designated in the original survey and plat. There is only an abstract of the decision, but, as we understand it, that case bears close resemblance to this case. *Here it may be fairly said that the question of an actual survey in order to determine just the legal effect of the ordinance changing the line of Broad street seems to be wholly immaterial in view of the fact that the area described in the contract as fronting 38 feet 5 inches upon Twenty-second Street have an actual existence in fact, and the lot so described is the land to which the insurance policy refers.*" (Emphasis supplied.)

See also, *Miller* v. *Lawyers Title Insurance Corporation* (ED Va, 1953), 112 F Supp 221.

A recent case from Texas, *Dallas Title and Guaranty Company* v. *Valdes* (Tex Civ App, 1969), 445 SW2d 26, is analogous on its facts and carefully delineates the scope of a "correct survey" exclusionary clause similar to the one in the instant case.

"The principal question is whether the 'correct survey' exception in the title policy relieved the insurer of liability.

"We affirm the judgment of the trial court.

\* \* \*

"The trial court made findings of fact, among which were findings:

"1) That when Flanagan conveyed to Mrs. Valdes on August 14, 1964, he represented in good faith that she was acquiring all of Lot 9, described orally by Flanagan as a commercial lot, about 150 feet by 200 feet, facing on the highway, and that Mrs. Valdes relied on the representations;

"2) That Flanagan received the property from David L. Tisinger, under the same description found in the deed from Flanagan to Mrs. Valdes, by deed dated August 3, 1964, followed on August 13, 1964, by a second deed describing the property without reference to Highway 183.

"3) That Flanagan had seen a plat of the subdivision as recorded, with the highway drawn across the plat so as to represent that its northern boundary coincided with the southern boundary of Lot 9, leaving Lot 9 intact.

"4) That at the time of conveyance from Flanagan to Mrs. Valdes, she intended to purchase Lot 9 as shown by the plat records, and at that time Mrs. Valdes had not seen the property 'on the ground'.

\* \* \*

"The trial court found that the title to Mrs. Valdes in Lot 9, Block G, 'failed by virtue of ownership of almost the entire lot by the State of Texas'. The title company urges that its guarantee of indefeasible title was subject to the 'correct survey' clause of the policy, and that since a 'correct survey' would have shown the encroachment by the highway, the company is relieved of liability for the loss sustained by Mrs. Valdes.

"*The evidence established that a correct survey made on the ground disclosed no conflict or discrep-*

*ancy between the survey and the description of record for Lot 9 as incorporated in the deed and the policy.* W. Harvey Smith, a registered public surveyor, testified that he had surveyed the property and prepared a plat from his survey, which is in the record. Smith testified that *if asked to make a correct survey of the land described in the deed,* the survey would show all of Lot 9, Block G, as shown on the original plat records, since there was nothing contained in the description to indicate an encroachment by the highway and showed no discrepancies or shortages in boundaries or areas.

\* \* \*

"*As applied to the property intended by Flanagan and the title company to be insured, the survey which showed Lot 9 to be as described in the recorded plat, including that part owned by the state in the highway, 'was a "correct survey" within the purport and intent of the policy'. Lawyers Title Insurance Corporation* v. *McKee* (Tex Civ App, 1962), 354 SW 2d 401. The 'correct survey' exception in the *McKee* case is identical with the provision in the policy before us. In that case the title company contended that a correct survey would have shown that the land received by the insured did not include two acres owned by other persons. In the case at bar the title company contends that a correct survey would have shown that the land conveyed to Mrs. Valdes did not include the 35,315 square feet owned by the state and used as a highway.

"In *Chanoux* v. *Title Insurance Co.* (Tex Civ App, 1953), 258 SW2d 866, the title company contended that because the parties believed the true boundary between Lots 12 and 13 was where a stone wall had been located, there was a discrepancy in boundary that a correct survey would have shown. The court met this contention with language having application also to the facts of our case:

" 'There may have been a dispute or controversy as to the true boundary between Lots 12 and 13, but

a correct survey at the time the policy was issued would have shown the true boundary of Lot 12 *as reflected by the deed and title policy to be exactly where it is and has always been.* True, it would have shown that the garage and improvements which the parties thought were on Lot 13 were in fact on Lot 12, but this would not have shown *any discrepancy in the boundary or area of Lot 12 as described in appellant's deed and policy.'* 258 SW2d 866, 867, col 2." 445 SW2d pp 27, 28, 29, 30. (Emphasis supplied.)

Moreover, the reasoning of an early Michigan case supports our construction of the "accurate survey" exclusion in the policy of title insurance:

"Inasmuch as the deed refers to the plat, and calls the points of the compass in accordance with its lines and angles, *no survey could be correctly based on any other system;* and if, as seems to be the case, the lines are not true meridian or east and west lines, the plat, and not the compass, should govern. The legal construction cannot be varied, and the guides which the parties chose to indicate and follow must not be disregarded in the construction of their deeds." *Bower* v. *Earl* (1869), 18 Mich 367, 376. (Emphasis supplied.)

And see, *Lawyers Title Insurance Corporation* v. *McKee* (Tex Civ App, 1962), 354 SW2d 401, 405.

To recapitulate: the scope of the exclusionary clause in this case is limited to "any matter which would be disclosed by an accurate survey and inspection of the premises". An accurate survey within the meaning of the policy is one based on the metes and bounds description of the insured property as stated in the policy of title insurance.

Nothing held in *Kuhlman* v. *Title Insurance Company of Minnesota,* cited and discussed *supra,* on which defendant relies, is to the contrary. *Kuhlman* is distinguishable both procedurally and on its

facts.   In *Kuhlman,* the exclusionary clause was found applicable only after trial on the merits. The case was not disposed of on motion for summary judgment.   Moreover, in *Kuhlman,* the trial judge found as a fact that a correct survey of the property based on the policy's metes and bounds description would have disclosed the shortage.   See 177 F Supp p 926.   In the instant case, this same question remains unanswered.   It constitutes an unresolved issue for trial.

Accordingly, the order of the trial court granting defendant's motion for summary judgment is reversed and the case is remanded for trial proceedings consistent with this opinion.   Costs to plaintiff.

All concurred.