HON, INC., Appellant,

v.

The **BOARD OF REGENTS CENTRAL MISSOURI STATE UNIVERSITY,**
Defendant,

v.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY,**
Respondent.

No. WD 34842.

Missouri Court of Appeals,
Western District.

July 24, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied
Oct. 2, 1984.

Dennis L. Davis, Kansas City, for appellant; Hillix, Brewer, Hoffhaus & Whittaker, Kansas City, of counsel.

Milton C. Clarke and Robert R. Kiene, Kansas City, for respondent; Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Edgar S. Carroll, Warrensburg, of counsel.

Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.

PRITCHARD, Presiding Judge.

Hon, Inc., purchased 120 acres of land on November 5, 1979, in Johnson County, Missouri, located on the south side of U.S. Highway 50 and across from the Skyhaven Airport, after purchasing a policy of title insurance from Commonwealth Land Title Insurance Company. Hon, Inc., then commenced development work on the tract with a view to selling commercial and residential property, and secured commitments from FHA. It then contracted with buyers for the sale of lots and home construction. In April, 1982, however, the Department of Housing and Urban Development rejected Hon's application for HUD sponsored mortgage loans because an environmental assessment showed that "a significant part of the development is situated in an area defined as a clear-zone at the south end of Runway 31 of the Skyhaven Airport." When FHA received HUD's final report, it decided to hold in abeyance its loan commitments to Hon.

With counsel, on May 13, 1982, Hon requested that Central Missouri State University, which owned Skyhaven Airport, disclaim any right or interest in the clear-zone over Hon's property, but CMSU refused, claiming that it had an easement by prescription acquired as a result of continuous

flight operations on Runway 31 since the mid-1940s.

Hon then gave written notice to Commonwealth of CMSU's claim which was adverse to Hon's title, and demanded that the title company defend and indemnify it against the claim. Commonwealth refused, claiming that it was not obligated under its policy to Hon because of the policy's Schedule B: "This policy does not insure against loss or damage by reason of the following: * * * 2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments which an accurate and complete survey would disclose." Commonwealth also asserted as a defense the policy's Exclusions from Coverage, "Paragraph 2. Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy." These claims were asserted as defenses to Count II of Hon's petition, which was dismissed by the trial court, without giving reasons, which dismissal was designated a final order for the purpose of appeal. The claim against CMSU, on the theory of inverse condemnation still pends, and there is nothing in the record to indicate that an eminent domain proceedings was of record at the date of Commonwealth's policy. The appeal, therefore, necessarily depends upon the application of Schedule B.2, supra, as Hon does not here claim that the eminent domain exclusion is not applicable.

█ The facts above recited are taken from Hon's petition, which are to be taken as true for the purpose of ruling a motion to dismiss, unless conclusively contradicted by affidavits and depositions in the case. *Empire Gas, Inc. of Noel v. Hoover Ball & Bearing Company*, 507 S.W.2d 657 (Mo. 1974); *Schmidt v. Schmidt*, 617 S.W.2d 601 (Mo.App.1981). Although William Hensley, Commonwealth's title examiner, testified on deposition that it had never been *his* practice to go out and inspect property; that no lawyer or title company would do that sort of thing, because there would be no valid assurance of determina-

tion of boundary lines or anything else with regard to the particular policy or commitment, and he could see nothing to be gained by it, that testimony does not reach conclusions which reasonably competent surveyors, as expert witnesses, might find in connection with flight easements over and across the physical boundaries of the land. That question might be resolved in what might be accurate and complete surveys of the property, which have not been done in this case.

■ Hon argues that the matter of whether or not the easement by prescription claimed by CMSU over Hon's property would have been disclosed by an "accurate and complete" survey is a question of fact which is properly made on the basis of proof, and not merely on the pleadings. Commonwealth argues that the clause in Schedule B, 2, supra, excepts coverage for unrecorded easements solely, and that the phrase, "which an accurate and complete survey would disclose" modifies only the term "encroachments", not "unrecorded easements". That is too narrow a construction of the clause, which is contained in one single sentence wherein "unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area", are connected by the conjunctive "and" with "encroachments"; thus a fair reading of the clause can only be that all of these items are subject to the disclosure of an accurate and complete survey.

■ The issue of the disclosure of the matter of an unrecorded prescriptive easement by accurate and complete surveys is certainly one of fact as Hon contends. It cannot be determined from the pleading alone what a surveyor might take into account in surveying the boundaries of the property and what he might determine to be an easement by prescription by aircraft landing and taking off at a low altitude from the observable, adjacent Runway 31 to the north of Hon's property. The testimony of expert witness surveyors might determine that proposition, that testimony to be evaluated by the trier of the fact. Although no case has been cited or found concerning this issue which involves a prescriptive flight easement, see these cases holding that what an accurate survey would disclose is a fact question: *Allpress v. Lawyer's Title Insurance Corp.*, 218 Tenn. 673, 405 S.W.2d 572, 573 (1966); *Waterview Associates, Inc. v. Lawyers Title Insurance Corporation*, 30 Mich.App. 687, 186 N.W.2d 803, 804 (1971); see *Happy Canyon Investment Company v. Title Insurance Company of Minnesota*, 38 Colo. App. 385, 560 P.2d 839, 842 (1976), where a surveyor testified that a "comprehensive survey" would reflect only visible improvements on the property, which had a second power line easement which could be ascertained from the public recordation indices, hence summary judgment was properly granted for the insured; *Houston Title Guaranty Company v. Fontenot*, 339 S.W.2d 347 (Tex.Civ.App.1960), holding that a correct survey would not reveal discrepancies in the boundary, hence a policy exclusion to that effect would not be a defense to an action to require the title company to defend the boundary dispute; *Nautilus, Inc. v. Transamerica Title Insurance Company of Washington*, 13 Wash.App. 345, 534 P.2d 1388 (1975), where there was a dispute between adjoining landowners as to the ownership of certain tidelands, and the court found that an accurate survey under a policy exclusion would not establish a line or ordinary high water and a meander line so as to dispose of a dispute over who owned the land between those points (obviously a fact question).

The judgment is reversed and the case is remanded for further proceedings.

All concur.