OPINION OF THE COURT
Kenneth R. Fisher, J.
It is important to emphasize that both sides agree, and this was confirmed at oral argument, that an accurate survey of “schedule A” as it appears in the subject policy would include the disputed Back Hill and Beach portions of the subject parcel. This is fully supported by plaintiffs expert affidavit (Summer-hays affidavit 1Í1Í 32-34, 35 [“A survey that correctly depicts the land described on Schedule A of the Title Policy should include the Beach and the Back Hill”]), and by defendant’s admissions in deposition testimony (collected in Mr. Knauf s affirmation Iflf 13-31).
Lawyers Title Insurance Corporation, recognizing this, does not support its motion with an “accurate survey” of plaintiffs property, but rather relies on the so-called Passero survey, commissioned by plaintiff in connection with an option he gave to what we will hereinafter refer to as the Daniele family entities. That survey of the adjoining parcel also shows upon a metes and bounds description of the adjoining Daniele parcel that it includes the Back Hill and Beach. Plaintiff questions the admissibility of the Passero survey, because it is not signed nor stamped certified as required by Education Law § 7209 (1), but the deposition testimony of the surveyor has been submitted with the motion, and that expert testimony serves as a proper vehicle for admission of the survey and his expert opinion if otherwise relevant and admissible. But the survey of the adjoining parcel does not establish as a matter of law what an accurate survey of the subject parcel would show, and therefore cannot, as a matter of law and contract interpretation, establish ■ the applicability of the survey exception in the policy. Accordingly, defendant’s motion must be denied irrespective of plaintiffs showing in opposition.
*163 Put another way, the survey exception in the policy excludes “any state of facts an accurate survey would disclose.” All agree that an accurate survey of the subject premises would disclose that the Back Hill and Beach are part of the subject parcel owned by plaintiff. Lawyers Title seeks to avoid the force of this by reference to the deposition testimony of Passero’s surveyor. Edward Freeman of Passero testified at his deposition that he created, for Gary Passero who is not a surveyor, a document (exhibit 58) in which he explained “how a survey is done[,] so I explained ... in Exhibit 58 on what we normally do to create a survey.” Freeman further testified that, “when we do a survey we do not do a survey of just the parcel we’ve been [rejtained for, we make sure we capture the parcels surrounding this so they have what they’re coming to them by deed by occupation.” He added, “we also take the deeds and compare the deeds to the field work for referencing tax information.” Earlier in the deposition, Freeman opined that an accurate survey of the subject premises would have disclosed that the Back Hill was not a part of the subject premises, but instead was part of the adjacent or Daniele parcel. (Freeman deposition at 32-33.) But Lawyers Title now concedes that schedule A in the policy “apparently is a metes and bounds description of Lot 1 which purports to include the Back Hill within Lot 1.” (Laprade affidavit, sworn to Aug. 15, 2007, at 1Í14; see also Knauf deposition cited above [collecting the deposition testimony by defendant’s employees and representatives on the issue].) This concession was confirmed at oral argument, as alluded to above.[1]
The important point, however, is that Passero was retained not just to do a survey of the adjoining Daniele property in connection with a proposed sale, but instead was retained generally “to provide professional engineering advice, consultation and services” in connection with a proposed “LaSalle Landing Property” project, including “conducting] a topographic survey of overall site, including a 100 ft. perimeter”; “an updated bound *164 ary survey”; a traffic study; to provide a “conceptual design— overall” and make “application to the Town Board” for the same; to provide a “Preliminary Design Place — Overall” site plan, utility plan, etc.; and to provide a “final design — overall” plan, including obtaining state and municipal approvals. (Moore affidavit, exhibit K.) So the defendant, in this action, to support what an accurate survey would show on a limited engagement for a survey in connection with a simple sale of real estate, has offered a survey procured in connection with an overall and complex real estate development project in which the surveyor’s main engagement is as a professional engineer in charge of designing the project and procuring governmental approvals.
The questions put to Freeman in the deposition on the subject of what Passero normally does on a survey in connection with a project of this sort were objected to by plaintiffs counsel and I find that, without clarification that Freeman would have done the same research in regard to neighboring properties on a more limited survey engagement of the kind contemplated by the policy in issue here, his answers are of no probative force. (See 2 James Charles Smith, Friedman on Contracts and Conveyances of Real Property § 10:6 [7th ed 2005] [distinguishing an “ordinary survey” from an architect’s survey, containing “additional data, which usually includes . . . location of adjoining properties,” among other things].) Indeed, the practice of defendant itself did not include looking at neighboring property abstracts. Lawyers Title, in opposition to plaintiff’s motion, included an affidavit of the Four Corners Abstract Corporation vice-president and chief title counsel, Mr. Garrison, who was considerably more conciliatory in his deposition toward plaintiff’s plight than defendant’s motion papers reveal, and who conceded that he “did not,” when he examined the abstract for the subject premises and issued the subject policy, “have an abstract of the title for Lot 2 [the Daniele property].” Accordingly, the submission of the Passero survey, commissioned on a significant and complex real estate development project on an adjoining parcel,[2] together with Freeman’s explanation of what he usually undertakes to do on such a project, fails to establish as a matter of law and contract interpretation that a more limited survey of the kind envisaged by the policy in ques *165 tion would have revealed the competing property descriptions we now know exist. Accordingly, defendant fails to meet its initial burden on summary judgment.
Turning to plaintiffs motion, it establishes the existence of the title policy insuring clear title to the premises described in schedule A, and it establishes through qualified expert testimony that the problem in title concerning the Back Hill (including the Beach which is wholly within the Back Hill) originated in an error in the preparation of the Monroe County atlases and tax maps beginning in 1924, and especially in 1941. The expert concludes, plausibly (by which I mean there is no apparent reason to reject his opinion out of hand or for any legal reason), that by reason of these discrepancies the Back Hill became included, erroneously, in the descriptions of the adjoining Daniele parcel, notwithstanding that it properly was part of the subject parcel throughout the subject parcel’s chain of title, and as described in a 1941 quitclaim deed containing the same description as used in the subject policy, and that the disputed property was consistently held by plaintiff’s predecessors in title, not Mr. Daniele’s predecessors in title. Plaintiff further establishes that no conveyance out of the Back Hill and Beach portion of its parcel occurred by its predecessors in title, and further no conveyance out by Daniele’s predecessors in title was made of the disputed property to anyone in the subject parcel chain. (Garrison deposition at 38, 49, 51.)
Thus, at a minimum, plaintiff’s proof in opposition to defendant’s motion and in support of its own motion shows that, while perhaps faithfully performing a metes and bounds survey of the property description contained in the deeds to the adjoining or Daniele parcel, the Passero survey is, in reality, not accurate. But plaintiffs proof does more, for it establishes as a matter of law and contract interpretation that an accurate survey would show that the Back Hill and Beach portions of schedule A, the subject premises, are vested in plaintiff through an unbroken claim of title dating back to the 1800s, and that, indeed, the owners of the adjoining parcel had no legitimate claim to the disputed premises at any time. Accordingly, plaintiff establishes that the state of facts an accurate survey would show included good title to the schedule A premises as not “being vested other than as stated therein” (quoting from the policy).
I further agree that plaintiff has established that a survey of the described premises would not have shown the title problem *166 identified by plaintiffs expert and that, therefore, defendant’s effort to raise an issue of fact on plaintiffs motion by reference to the Passero survey, commissioned on a substantial and complex development project, is unavailing.[3] As plaintiff contends, the error is in the chain of title for the adjoining or Daniele parcel, not in the course description which might be the subject of, and revealed by, an accurate survey. This is a title dispute that, by its nature, would not be apparent from the physical inspection of the premises a surveyor might have done if hired by plaintiff prior to closing. (11 Couch on Insurance 3d § 159:41 [and cases collected at nn 9-10]; Waterview Assoc., Inc. v Lawyers Tit. Ins. Corp., 30 Mich App 687, 701-707, 186 NW2d 803, 810-812 [1971]; 30 Mich App at 702, 186 NW2d at 810 [collecting cases for the proposition that an “accurate survey” within the meaning of the exception contemplates a “metes and bounds description of the property as stated in the policy of title insurance”]; 30 Mich App at 703, 186 NW2d at 810-811 [holding that the survey exception is inapplicable where such an endeavor by a surveyor would reveal only that “ ‘the premises as described in the contract have an actual existence in fact within the boundary lines, . . . and the lot so described is the land to which the insurance policy refers’ ”], quoting Chicago Real Estate Bd. v Mullenbach, 184 111 App 437, 438 [1913]; Allpress v Lawyers Tit. Ins. Corp., 218 Tenn 673, 675, 405 SW2d 572, 573 [1966]; Nautilus, Inc. v Transamerica Tit. Ins. Co. of Wash., 13 Wash App 345, 349, 534 P2d 1388, 1391 [1975].)[4] If, of course, there was any contention that a metes and bounds survey would *167 not have shown that the premises as described in schedule A had “an actual existence in fact,” a trial would be necessary. But on these cross motions, and considering the deposition testimony of defendant’s representatives described in the Knauf affidavit, the matter is fully conceded. (Compare Muscat v Lawyers Tit. Ins. Corp., 135 Mich App 26, 30-31, 351 NW2d 893, 895 [1984] [where it was conclusively shown that an accurate survey of a property description “in accordance with the description of the insured property in the insurance policy . . . disclosed the encroachment of the building”].) If defendant had presented admissible testimony that an ordinary survey would have accounted for the property descriptions contained in the neighboring properties’ deeds, as in an architect’s survey, defendant might have raised an issue of fact requiring trial. Accordingly, plaintiffs failure to retain the surveyor and obtain a survey in connection with his closing on the subject property cannot raise an issue of fact.
There is a vital distinction between the juxtaposition of the facts disclosed by the survey (with the exclusion at issue) in Walker Rogge, Inc. v Chelsea Tit. Ins. & Guar. Co. (116 NJ 517, 562 A2d 208 [1989]) and the facts adduced on this motion, as applied to the exclusion at issue here. The issues in that case bear no resemblance to the problem at issue here. Unlike the plaintiff in the New Jersey case, the plaintiff here received a deed containing, by unrefuted expert testimony of Summerhays, an accurate description of its parcel as it passed through its numerous predecessors in interest. The error appears to be in the parcel description of the adjoining or Daniele property, and that error was evidently prompted by preparation of erroneous county tax maps and atlases. Unlike in the New Jersey case, the plaintiff here did not actually buy a parcel he thought larger than an accurate survey would have revealed he was entitled to under his claim of title; the survey would have revealed that plaintiff got exactly what he now contends he got, and what the undisputed expert title search performed by Summerhays confirms that he got. In other words, because “a survey relates the property as described in recorded instruments to the land as it exists” (116 NJ at 534, 562 A2d at 217), and each party agrees that the Back Hill and Beach portions are included on schedule *168 A, defendant cannot avoid liability because erroneous tax maps and atlases created in the early 1900s caused similarly erroneous descriptions to be included in deeds to an adjourning parcel, which in turn would mislead a contemporary surveyor to believe that a survey of the adjoining property would include the same land. Even accepting that the Passero survey is relevant despite the obvious differences between an engagement for a simple land sale and an engagement for a large and complex commercial development project, the survey in this case only revealed that the owner of the adjoining parcel has deeds also including a property description which includes the Back Hill and Beach portions. Although it is not necessary to decide or quiet title on these cross motions, the Passero survey does not reveal any state of facts ultimately impairing plaintiff’s good title to the property described in the policy, and which the only available evidence shows was established through an unbroken claim of title dating back to the mid-1800s. That defendant would not have insured the property if it had known of the competing property description in the deeds to the adjoining parcel is of no moment unless it is shown that a survey of plaintiff’s premises would have revealed the Daniele property description. The question is whether an “ordinary survey” would have revealed the competing property description on an adjoining parcel, and, for the reasons stated above, particularly with respect to the difference between an ordinary survey and the “architect’s survey” Passero obviously was hired to complete, defendant’s proof is wholly wanting on the subject.
If defendant’s reading of the exclusion was deemed plausible, the survey exception would exclude coverage for any discrepancy turned up in an adjoining landowner’s property description, no matter how demonstrably false, upon an accurate title examination and survey of the two parcels. If the survey exception were to sweep within its reach such a conflict, no matter how ephemeral and ultimately resolvable in the insured’s favor, it would swallow up the rule of defense and coverage in every case of a conflict between two property descriptions that an insurer might not cover if alerted to it in advance but which might well be resolved in the insured’s favor upon close examination. The survey exception in this policy does not in so many words address what an insurer might not want to risk insuring if notified in advance of a potential problem, but rather a state of facts having reference to the terms of the policy coverage in regard to title “being vested other than as stated therein.” I *169 find the exclusion unambiguous in this respect; the state of facts referred to on the survey exception clause is a state of facts relevant to the insured’s title, not a state of facts relevant to an insurer’s decision whether to risk insuring title. Therefore, the rule applies that policy exclusions should not be “extended by interpretation or implication, but are to be accorded a strict and narrow construction.” (Incorporated Vil. of Cedarhurst v Hanover Ins. Co., 89 NY2d 293, 298 [1996].) To the extent any ambiguity in this respect may be found, it is to be resolved in favor of the insured under settled principles of policy interpretation. (Guachichulca v Laszlo N. Tauber & Assoc., LLC, 37 AD3d 760, 761 [2007]; Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390, 398 [1983].)
At bottom, plaintiff establishes that an accurate survey of its own premises would show a state of facts under which it owns the Back Hill and Beach portions, that such a survey would not have revealed the competing property description of the adjoining or Daniele parcels contained in the deeds thereto, and that a properly conducted title examination would show a state of facts under which it owns the Back Hill and Beach and that the owners of the Daniele parcel do not. Defendant admits what an ordinary survey of the schedule A premises would show, fails to establish by admissible evidence that an “ordinary survey” would have revealed the competing property descriptions in the deeds to the adjoining parcel, and does not dispute the Summer-hays’ expert affidavit by expert testimony of its own that the title examination Summerhays did is inaccurate.
Summary judgment is granted upon the terms plaintiff requests, i.e., that (1) defendant’s motion is denied; (2) plaintiffs motion for partial summary judgment on liability is granted declaring defendant liable to immediately undertake efforts to clear title to the Back Hill, including the Beach within the Back Hill; and (3) otherwise to schedule a trial on damages, etc., for plaintiff.

. Defendant cannot have it both ways: it insists that an accurate survey must take account of neighboring property descriptions, but it refuses to acknowledge that, for purposes of the Passero survey of the adjoining parcel, plaintiffs neighboring parcel contained a property description also showing title in the disputed area. For the reasons stated below, the court rejects defendant’s effort to implicate the property descriptions of neighboring parcels in an ordinary survey as might have accompanied plaintiffs purchase of the subject property. But accepting defendant’s argument at face value, the Passero survey cannot be established as “accurate” for purposes of defendant’s motion because it fully ignored plaintiffs competing property description.

. The evidence is also undisputed that plaintiffs representative had no knowledge of the results of the Passero survey at the time of closing, and that Freeman did not even complete his work on the project until after the deeds to the subject premises were filed.

. In 1 Joyce Palomar, Title Insurance Law § 7:9 (2007), it was stated: “More often, the cases involve insureds who have not obtained surveys of any sort prior to closing. Nevertheless, these insureds assert that this general exception does not bar their claims for indemnification because the relevant title defect would not have been revealed by an accurate survey. Where the claim adverse to the insured title relies on facts other than mere boundary lines, a survey of the land may not be sufficient to reveal the claim and *167 this exception will not protect the title insurer. If the court determines the question is essentially of title, rather than of boundary, dimensions, or location of improvements, the exception will not bar the insured’s claim.”

. As defendant’s representative Ms. Esteves acknowledged, the policy language, “any state of facts an accurate survey would disclose,” would “normally” mean a simple survey conducted by a “surveyor . . . retained to survey a parcel that we are insuring,” i.e., schedule A. (Esteves deposition at 39-40, 41 [“we insure a legal description”]; Garrison deposition at 26-27 [defendant insures “a metes and bounds description,” adding that “sometimes there isn’t one”]; see 2 James Charles Smith, Friedman on Contracts and Conveyances of Real Property § 10:6 [describing in detail the “ordinary survey” and distinguishing the “architect’s survey” containing “additional data” of the kind commissioned from Passero on this complex development project].)