YOAKUM v PRACTICAL HOME BUILDERS, INC.

1. NEGLIGENCE—GENERAL CONTRACTORS—OWNERS OF PROPERTY—LIA-
   BILITY—PUBLIC POLICY.

   Public policy demands that a general contractor be charged with
   the responsibility of insuring that adequate safety measures be
   implemented on a construction site, and the liability of the
   owner of the property to an injured employee of a subcontrac-
   tor is based on the same standard to the extent that the
   property owner retains control of the work.

2. NEGLIGENCE—INSTRUCTIONS TO JURY—GENERAL CONTRACTORS—
   SUBCONTRACTORS—CASE PRECEDENT.

   An instruction to the jury which based liability of a general
   contractor and a property owner upon the negligent failure to
   take reasonable precautions against a danger which resulted in
   injury to an employee of a subcontractor was not reversibly
   erroneous, even though the language of the instructions was
   couched in terms of an activity which is inherently dangerous,
   where the ultimate question presented to the jury required
   them to determine whether the defendants had failed to imple-
   ment reasonable safety measures, as required by the most
   recent case law.

Appeal from Wayne, Horace W. Gilmore, J.
Submitted Division 1 May 7, 1974, at Detroit.
(Docket No. 16621.) Decided September 10, 1974.

Complaint by John Yoakum and Dinah Yoakum
against Practical Home Builders, Inc., and South-
pointe Square Apartments for negligence. Judg-
ment for plaintiffs. Defendants appeal. Affirmed.

*Sommers, Schwartz, Silver, Schwartz, Tyler &*

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 57 Am Jur 2d, Negligence § 50.

*Gordon, P. C.* (by *Donald J. Morbach*), for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pederson* (by *Jeannette A. Paskin* and *Thomas P. Bingman, Jr.*), for defendants.

Before: Bashara, P. J., and McGregor and Van Valkenburg,* JJ.

Van Valkenburg, J. The facts germane to the resolution of this appeal are not in dispute. Defendant Southpointe Square Apartments engaged defendant Practical Home Builders, Inc., as the general contractor for the purpose of building a multi-unit apartment complex. Practical Home Builders, Inc., in turn engaged one E. M. Nolan Contracting Company as a subcontractor to do the rough carpentry work. Plaintiff John Yoakum worked for Nolan as a journeyman rough carpenter.

On March 17, 1969 plaintiff was working on the roof of one of the buildings. While he was working near the edge of the roof he was struck in the back of the neck or head by a sheet of plywood which the wind had blown from a stack of plywood which had been placed on the roof. As a result of this event plaintiff dropped the portable electric saw he was using, causing said saw, which had an unguarded blade, to cut into his left leg to the extent that 80 to 100 stitches were needed. As a result of the blow to his head or neck and the injury to his leg, plaintiff now suffers from several permanent injuries.

Plaintiff commenced this action against defendants on the theory that since he was engaged in

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

an "inherently dangerous" activity, both defendant owner and defendant general contractor owed a non-delegable duty to provide him with a safe working environment. Defendants argued basically that plaintiff failed to prove that the work was "inherently dangerous" and that the failure to provide necessary safety equipment rested solely with plaintiff's employer, the subcontractor.

After extensive discussion between the trial court and counsel with respect to the meaning and effect of *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972). the trial court charged the jury in pertinent part, as follows:

"Those are the four elements, and I will develop them more.

"First, that the work that he was engaged in was inherently dangerous for a carpenter;

"Second, that the defendants, Practical Homes and the South Pointe Square Apartments, were negligent;

"Third, that that negligence was a proximate cause;

"And, fourth, that he received injuries flowing from that.

"Now, it is the law in this State that one who employs an independent contractor to do work involving special danger to others, which the employer knows or has reason to know to be inherently *[sic]* or normal or which he contemplates or has reason to contemplate when making this contract, is subject to liability for physical harm caused to such others by the contractor's failure to make reasonable precautions against such danger.

* * *

"You will recall that I said the first thing the plaintiff must establish—has the burden of proof of establishing —and I will define burden of proof for you shortly—is that this activity was inherently dangerous for a carpenter. Now, in defining and determining whether this

is inherently dangerous is the job of you ladies and gentlemen of the jury under all the facts and circumstances.

"The danger to which the doctrine has reference to here is one that is incidental to and characteristic of the stipulated work itself.

"Now, you must first determine whether the work that the plaintiff was doing was inherently dangerous to him as a carpenter. This is the first determination you make.

"If you determine the work was not inherently dangerous, that is the end of the case. You go no further in your deliberations and would return a verdict for no cause for action.

"But if you do determine that the work was inherently dangerous, then you go to the second thing, which is negligence, because as I said, if the defendants are negligent, then the plaintiff has the burden of proof of showing that the defendants were negligent.

"Now, what do I mean when I say negligence? When I use negligence with respect to the defendants' conduct, I mean the failure to do something which a reasonably careful builder would do or the doing of something which a reasonably careful builder would not do under the circumstances which you find existed in this case. It is for you to decide what a reasonably careful builder would do or would not do under the circumstances here.

"When I use the words 'ordinary care', I mean the care which a reasonably careful or prudent builder would use under the circumstances which you find in this case.

"Now, one other point, the law says that the violation of any building code is evidence of negligence. The violation of the building code is evidence of negligence.

"Now, what do I mean when I talk about negligence? Negligence is really the failure to use due care. Did the defendant use that degree of care which a reasonably prudent person or a reasonably prudent builder would use under the same or similar circumstances for the protection of the plaintiff? That is all we're talking about. Negligence is not a complicated thing. It is the

failure to use due care under the circumstances then and there existing."

The court thereafter proceeded to instruct the jury as to proximate causation and damages.

At the close of the charge to the jury the court asked defense counsel if he had any objections, to which counsel replied that he. did not think *McDonough* was applicable.[1]

On appeal defendants would have this Court undertake an examination of the meaning and mandate of the *McDonough* decision. We find this to be unnecessary in light of the Court's recent opinion in *Funk v General Motors Corporation*, 392 Mich 91; 220 NW2d 641 (1974). It is clear that the majority in *Funk* was beating a hasty, if *sub silentio*, retreat from the "inherently dangerous" "strict liability" positions which pervaded the various opinions in *McDonough*. The *Funk* Court rather bottomed liability in the general contractor on the basis that public policy demands that the general contractor be charged with the responsibility of insuring that adequate safety measures be implemented. The liability of the owner of the property is based on the same standard to the extent that said property owner retains control of the work.[2]

There can be no question that the trial court

---

[1] The jury thereafter returned a verdict of $474,000 in favor of plaintiff husband and $10,000 in favor of plaintiff wife.

[2] It should be noted that in the instant case defendants have argued that their freedom from liability is co-extensive with one another. At no time, either here or below, has defendant property owner argued that the liability, if any, rested solely with the general contractor; on the contrary, both defendants argued that the sole responsibility rested with the subcontractor. In light of the failure of the property owner to plead the possible defense of delegation to the general contractor, we will treat the owner's liability as being co-extensive with that of the general contractor.

fashioned its instruction on its conception of the holding in *McDonough*. The question now is whether the charge can stand the test formulated in *Funk*. We think it can. While the charge was couched in the *McDonough* terms of an activity that is inherently dangerous, the trial court fortunately did not bottom liability upon some form of strict liability as *McDonough* would seem to mandate, but rather based liability upon the negligent failure of defendants to take reasonable precautions against the danger. In doing so the trial court, while not following what *McDonough* would seem to mandate, arrived at what *Funk* now mandates.

The fact that the instruction used the "inherently dangerous activity" terminology in no way prejudiced defendants, since clearly if the jury found that the activity was "inherently dangerous for a carpenter" and that defendants failed "to do something which a reasonably careful builder would do", the end result would be to find that defendants had failed to implement reasonable safety measures. While such language is probably not the best way to explain the *Funk* standard, since the ultimate question presented to the jury required the jury to determine that which *Funk* requires, we find no reversible error, particularly in light of the fact that defendants' contention was that they had no liability rather than that the instruction as given was not as clear as it might be.

In light of this disposition, we find it unnecessary to address ourselves to the question raised by plaintiffs on cross-appeal.

Affirmed. Costs to the plaintiffs.

All concurred.