ERICKSON v PURE OIL CORPORATION

OPINION OF THE COURT

1. MASTER AND SERVANT—GENERAL CONTRACTORS—OBSERVABLE AND
   AVOIDABLE DANGERS—COMMON WORK AREAS—DEGREE OF RISK.
   Part of the business of a general contractor is to assure that
   reasonable steps within its supervisory and coordinating au-
   thority are taken to guard against readily observable, avoidable
   dangers in common work areas which create a high degree of
   risk to a significant number of workmen.

2. MASTER AND SERVANT—GENERAL CONTRACTORS—SUBCONTRACTORS
   —COMMON WORK AREAS—EMPLOYER'S RESPONSIBILITY—OBSERV-
   ABLE AND AVOIDABLE DANGERS—JOB SAFETY.
   Inherent in the general contractor-subcontractor relationship is
   the general contractor's supervisory and coordinating authority
   wherein ultimate responsibility for job safety in common work
   areas is placed; the tests to be applied are, did the general
   contractor take reasonable steps to guard against readily ob-
   servable, avoidable dangers, and second, did the injury occur in
   a common work area?

3. MASTER AND SERVANT—GENERAL CONTRACTORS—SUBCONTRACTORS
   —COMMON WORK AREAS—EMPLOYER'S RESPONSIBILITY—SEPA-
   RATE CONSTRUCTION SITES.
   The scope of a general contractor's supervisory duties and liabil-
   ity for injuries which occur in common work areas is not
   limited where the building under construction was in a location
   separate and away from the common work area of the construc-
   tion site and no other contractors were working on the day of
   an accident and injury to an employee of a subcontractor,
   because there is no requirement that two or more subcontrac-
   tors be actually working at the same time in the same place;
   all that is required is that two or more subcontractors will
   eventually work in the same area of the construction site.

REFERENCE FOR POINTS IN HEADNOTES
[1–7] 53 Am Jur 2d, Master and Servant § 305.

4. MASTER AND SERVANT—GENERAL CONTRACTORS—SUBCONTRACTORS
   —OBSERVABLE AND AVOIDABLE DANGERS—EMPLOYER'S RESPONSI-
   BILITY—QUESTION OF FACT.

   It is a question of fact for the jury whether dangers existed which
   were observable and avoidable and whether or not reasonable
   steps were taken by a general contractor to guard against such
   dangers where the employee of a subcontractor was injured in
   a slip-and-fall accident in an area alleged to be a common work
   area.

5. MASTER AND SERVANT—TORTS—OWNER'S LIABILITY—INJURY—SE-
   LECTION OF GENERAL CONTRACTORS—CONTROL OVER PROJECT.

   An owner of a construction project can incur liability for an on-
   the-site injury to a subcontractor's employee if the owner is
   negligent in its selection of the general contractor or if the
   owner retains sufficient control over the project so that it can
   be said that the owner, and not the general contractor, effec-
   tively controls the project.

6. MASTER AND SERVANT—TORTS—OWNER'S LIABILITY—INJURY—EF-
   FECTIVE CONTROL OF PROJECT—CONTRACTUAL CONTROL OF PROJ-
   ECT—DISCHARGE OF CONTRACTORS—DAMAGES—INDUSTRY'S STAN-
   DARDS.

   An owner of a construction project is not liable for an on-the-site
   injury to a subcontractor's employee unless he retains effective
   control over the project; effective control requires more than
   the retention of contractual control, including the inherent
   right to discharge the general contractor who does not perform
   in accordance with the industry's standards.

DISSENT BY D. F. WALSH, J.

7. MASTER AND SERVANT—TORTS—GENERAL CONTRACTORS—SUBCON-
   TRACTORS—ACCIDENTS—COMMON WORK AREAS—SEPARATE
   BUILDING LOCATION—LIABILITY.

   *A plaintiff's injuries, as an employee of a subcontractor, did not*
   *occur in a common work area where the accident happened at*
   *a building location which was separate and away from the*
   *common work area of a construction site, and a general con-*
   *tractor should not be liable for a common work area accident*
   *just because two or more subcontractors may be actually work-*
   *ing at the separate building location at the same time in the*
   *same place or two or more subcontractors will eventually work*
   *in the same area of the construction site.*

Appeal from Wayne, Joseph A. Sullivan, J. Submitted May 5, 1976, at Detroit. (Docket No. 24582.) Decided November 22, 1976. Leave to appeal applied for.

Complaint by Ralph E. Erickson and Susan Erickson against the Pure Oil Corporation, a division of Union Oil of California, Butler Manufacturing Company and Antler Corporation for damages arising from a slip-and-fall personal injury accident at a construction site. A summary judgment granted Butler Manufacturing Company was affirmed by this court in 57 Mich App 87; 225 NW2d 173 (1974). Summary judgment for defendants. Plaintiffs appeal. Judgment for Pure Oil Corporation affirmed. Judgment for defendant Antler Corporation reversed.

*Theodore M. Rosenberg,* for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Jeannette A. Paskin),* for defendants.

Before: BRONSON, P. J., and D. E. HOLBROOK, JR. and D. F. WALSH, JJ.

D. E. HOLBROOK, JR., J. During the summer of 1968, the Pure Oil Company contracted with the Antler Corporation for the construction of a lube oil storage facility at its Romulus, Michigan, complex. As part of the contract Antler was to erect a combined office-warehouse building. Antler selected a pre-fabricated metal building manufactured by Butler Manufacturing Company as the structure for the office-warehouse building and engaged the Garrison Company to erect the metal shell of the building.

Plaintiff, Ralph Erickson, aged 19, began working for the Garrison Company in 1968 as a permit

ironworker. He was a part of the crew dispatched by Garrison to the Pure Oil construction site to assist in the erection of the office-warehouse building. Once the frame of the pre-fabricated metal building was up, the crew began installing corrugated metal sheeting on the roof. This sheeting was covered with a light oil commonly used to prevent corrosion, but unfortunately, also caused the workers to slip and slide on the steep roof.[1]

On the second day of work at the construction site, Erickson was carrying some materials along the apex of the roof when he lost his footing, slipped and fell approximately 20 feet onto a concrete apron. His injuries required several months of hospitalization, numerous operations and intensive therapy.

Plaintiffs instituted this action against the Pure Oil Company, as owner of the site, and Antler Corporation, the general contractor, alleging that both had negligently failed to provide safety precautions for Garrison, the subcontractor. Plaintiffs had also brought suit against Butler Manufacturing Company for defective design, however, Butler was granted a summary judgment, affirmed by this Court in *Erickson v Pure Oil Corp,* 57 Mich App 87; 225 NW2d 173 (1974). Pure Oil and Antler moved for and received summary judgment under GCR 1963, 117.2(3). From that judgment plaintiffs appeal as of right.

I

In the opinion of the trial court, *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), was dispositive of both issues presented. Simply

---

[1] The roof had a 4/12 pitch, meaning there were 4 inches of vertical rise for every 12 inches of horizontal run.

stated, those issues are: Does a general contractor maintaining a supervisory capacity on a project owe any duty to the employees of its subcontractor to eliminate unsafe conditions in common work areas where the subcontractor is working alone on the frame, roof and side panels of the building? And, secondly, does the owner of the construction site have a similar duty? We conclude that *Funk v General Motors Corp, supra,* is controlling; but that the trial court reached an incorrect result in its application of that case.

## II

The facts of *Funk* bear repetition at this point as they apply to the instant case. In *Funk,* the plaintiff was injured while fitting pipes 30 feet above the ground on a steel frame structure. Prior to his accident the plumbing subcontractor had failed to supply any of its own safety equipment. The general contractor had a man present on the construction site daily who testified that he had not seen any safety belts or safety nets. Nevertheless, it neglected to cure the hazardous situation. Noting first that the subcontractor was primarily responsible for its own employees' safety, Justice LEVIN, writing for the Court, observed:

"We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen." *Funk v General Motors Corp, supra* at 104.

The Court's rationale for holding a general contractor liable was founded on public policy:

"Placing ultimate responsibility on the general con-
tractor for job safety in common work areas will, from
a practical, economic standpoint, render it more likely
that the various subcontractors being supervised by the
general contractor will implement or that the general
contractor will himself implement the necessary pre-
cautions and provide the necessary safety equipment in
those areas." *Funk v General Motors Corp, supra* at
104.

Inherent, therefore, in the general contractor-sub-
contractor relationship is the general contractor's
supervisory and coordinating authority wherein
ultimate responsibility for job safety in common
work areas is placed. The trial court therefore
erred in holding that Garrison had the sole, unsu-
pervised responsibility for erection of the building.

Analyzing the above cited portions of *Funk* we
conclude that the tests to be applied are two: First,
did the general contractor take reasonable steps to
guard against readily observable, avoidable dan-
gers? Second, did the injury occur in a common
work area?

Addressing ourselves to the first of such tests we
conclude that deposition testimony included evi-
dence that (1) Antler maintained a construction
office on the job site; (2) the Antler superintendent
visited the job site daily and observed same; (3)
plaintiff and his fellow workmen had been at the
job site three or four days prior to the accident; (4)
plaintiff, during this time, had experienced diffi-
culty on the roof; (5) plaintiff requested that pre-
cautions be taken to guard against falling; (6)
limited precautions were taken by the utilization
of "chicken boards"; and (7) Antler's superintend-
ent, subsequent to the accident, advised plaintiff's
father that they should have had their safety lines
on. The latter factor was an unobjected-to hearsay

statement made by plaintiff at the taking of plaintiff's deposition. Hence we conclude that there was a question of fact as to whether dangers existed which were observable and avoidable by Antler and whether or not reasonable steps were taken by Antler to guard against such dangers.

We now turn to the question of whether sufficient evidence existed from which it could be determined that the accident occurred in a "common work area".

The frequently recurring use of the phrase "common work area" in *Funk* suggests that the Supreme Court desired to limit the scope of a general contractor's supervisory duties and liability for injuries which occur in "common work areas". In *Funk*, the injured plaintiff was one of many trades, or "men in the steel", present at the construction site. *Funk v General Motors Corp, supra* at 103. As a member of the pipefitters' crew he had not helped to erect the steel frame; another crew had. Nonetheless, working on the roof the pipefitters must have relied on it for support. In this situation, the Supreme Court did not excuse the general contractor for an accident on the roof even though technically speaking the roof was not "in the steel". The Supreme Court said:

" * * * even though Funk fell from the roof, and not the beams, the jury could properly conclude that the failure to provide any safety equipment *anytime anywhere* for men working over 30 feet above the ground was the cause in fact of Funk's injury." (Emphasis supplied.) *Funk v General Motors Corp, supra* at 115, 116.

In the instant case we hold that the trial court erred when it concluded as a matter of law that

Erickson's injuries did not occur in a common work area because the Butler building was in a "location separate and away from the common work area of the construction site". First, plaintiff was entitled to the benefit of any reasonable inferences that could be drawn from the record. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973), *McLaughlin v Consumers Power Co,* 52 Mich App 663, 666; 218 NW2d 122 (1974). The moving party in a motion for summary judgment under GCR 1963, 117.2(3) has the burden of showing that based on the "pleadings, depositions, admissions, and documentary evidence then filed" on the record, together with the parties' affidavits, no genuine issue of material fact exists. GCR 1963, 117.3, accord, *Waterview Associates, Inc v Lawyers Title Insurance Corp,* 30 Mich App 687, 700; 186 NW2d 803 (1971), *lv den,* 384 Mich 835 (1971). The trial court apparently relied on deposition testimony that no other contractors were working on the building on the day of the accident. *Funk* made no requirement that two or more subcontractors be actually working at the same time in the same place. All that is required is that two or more subcontractors will eventually work in the same area of the construction site.

Defendant's brief admits the fact that other trades would be involved in the completion of the office-warehouse building. Subcontractors had been hired to excavate, pour cement, and install heating, plumbing and electricity. Giving plaintiffs the benefit of any reasonable inferences we cannot say that these subcontractors will not work on the steel frame structure, will not arrive at the site at a later time and be subject to the same hazard from the lightly oiled sheets. Therefore, in light of the present record, the trial court reversibly erred

in granting defendant Antler's motion for summary judgment.

Our decision herein does not represent a dramatic change from the *Funk* limitations. That opinion continually stands as a touchstone of public policy considerations. *Funk v General Motors Corp, supra* at 104, *Yoakum v Practical Home Builders, Inc,* 55 Mich App 384, 388; 222 NW2d 251 (1974), *lv den,* 394 Mich 901 (1975). By holding that a jury may find liability for a supervising general contractor, even though its subcontractors may work on the steel frame structure one at a time, we do not substantially deviate from the sound public policy restrictions of *Funk.*

### III

The final matter to be addressed is the liability of Pure Oil Corporation. Before an owner of a construction project can incur liability for an on-the-site injury to a subcontractor's employee one of two conditions must be met. First, there is liability if the owner is negligent in its selection of the general contractor. *Funk v General Motors Corp, supra* at 101, 110, fn 14. Second, the owner is liable if it retains sufficient control over the project so that it can be said that the owner effectively controls the project and not the general contractor. *Funk v General Motors Corp, supra* at 105.

The plaintiffs have not alleged that Antler Corporation is not a qualified general contractor. Therefore, liability of Pure Oil Corporation must rest on the fact that it retained control over the construction project.

In granting summary judgment in favor of Pure Oil Corporation, the trial court concluded that Pure did not retain effective control over the proj-

ect. The only evidence in the record supporting the theory that Pure retained control is found in the contract between Pure and Antler. In the contract, Pure reserved the right to terminate anyone who did not comply with Pure's rules and regulations.

However, in order to retain effective control over the project the owner must do more than retain contractual control. *Funk v General Motors Corp,* *supra* at 106–108. If contractual control were held to be sufficient, nearly every owner of a construction site would be subject to liability for on-the-site injuries to subcontractors' employees. We reach this conclusion since every owner retains the inherent right to discharge, subject to the payment of damages, the general contractor who does not perform in accordance with the industry's standards.

The trial court did not err in granting Pure Oil Corporation's motion for summary judgment on the basis that there was no dispute as to a genuine issue of material fact.

Reversed and remanded for proceedings consistent with this opinion as to Antler Corporation; costs to abide the event. Affirmed as to Pure Oil Corporation; costs to Pure Oil.[2]

BRONSON, P. J., concurred.

D. F. WALSH, J. *(dissenting).* The majority would reverse the trial court's grant of summary judgment in favor of Antler Corporation on the authority of *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974). The majority holds "that the trial court erred when it concluded as a matter of law that Erickson's injuries did not occur in a

_____

[2] Since Antler Corporation and Pure Oil Corporation have been represented on appeal by joint counsel who filed a joint brief, Pure may have one-half the defendants' costs as its costs. .

common work area because the Butler building was in a 'location separate and away from the common work area of the construction site'. * * * *Funk* made no requirement that two or more subcontractors be actually working at the same time in the same place. All that is required is that two or more subcontractors will eventually work in the same area of the construction site".

In my judgment, to say that a work area in which only one subcontractor is working is a "common work area" because other subcontractors may be working in that area at a future time is to expand the *Funk* doctrine to an extent that is unwarranted and unwise. In my opinion, the trial court ruled correctly that the plaintiff was not injured in a "common work area" and therefore that the general contractor was not liable for failing to supervise the subcontractor's employee. I would affirm the trial court.