872 F.2d 1026
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John LAMMIE, Plaintiff-Appellant,
v.
INDIANA CONSTRUCTION CORPORATION, Defendant-Appellee.
 No. 88-1540.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1989.
 
 Before BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges, and GEORGE C. SMITH,* District Judge.
 PER CURIAM.
 
 
 1
 This action arose from an alleged injury to John Lammie, a subcontractor's employee, on a construction project for which the defendant was the general contractor. This appeal from a summary judgment for the defendant raises questions arising under the common law of Michigan as to the duty owed by a general contractor to the employee of a subcontractor.[1]
 
 
 2
 Plaintiff Lammie was employed by Hennes Steel Erecting Company, a subcontractor engaged in the installation of steel reinforcing rods (known as "rerod" or "rebar") for defendant Indiana Construction Corporation, a general contractor retained to upgrade a sewage treatment plant at Sawyer Air Force Base in Michigan. During the course of the construction, the defendant's crane moved a bundle of rebar into the excavation area where plaintiff was working. There had been some discussion as to the placement of the rebar, but the load was placed by defendant's crane operator at a location in the excavation that had been designated by the foreman of the subcontractor's work crew. The plaintiff alleges that his back was injured when he had to carry the rebars too great a distance from the place where the bundle was opened to the place where the rebars were to be used. The crux of plaintiff's complaint against the defendant contractor is that the defendant breached a duty to locate the rebars within the excavation at a place where they would have been nearer to the point of use or, in the alternative, the defendant had a supervisory safety duty to insure that two workers were available and assigned to carry each rebar.
 
 
 3
 The defendant moved for a summary judgment under Fed.R.Civ.P. 56(c), asserting that on the basis of the pleadings, admissions, interrogatories, and depositions, plaintiff has failed to establish a duty owed to him by the defendant. The plaintiff responded that these duties arose under the common law of Michigan and from the contracts between the government and the defendant and between the defendant and the plaintiff's employer, the subcontractor. After a hearing on the matter, the District Judge granted the summary judgment motion from the bench.
 
 
 4
 It is well established that "[t]his court must apply the same test in reviewing the granting of a summary judgment motion that is utilized by the district court." Hand v. Central Transport, 779 F.2d 8, 10 (6th Cir.1985). In its de novo consideration, the court must grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard "mirrors the standard for a directed verdict," which is mandated "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (citations omitted). The plaintiff bears the burden of proof, and defendant's motion for summary judgment must be granted if "there is an absence of evidence to support the [plaintiff's] case." Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).
 
 
 5
 At the heart of this case is whether the facts established through discovery bring the defendant within the ambit of general contractor liability set forth by the Supreme Court of Michigan in Funk v. General Motors Corp., 392 Mich. 91, 220 N.W.2d 641 (1974):
 
 
 6
 We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen.
 
 
 7
 Id. at 104, 220 N.W.2d at 646. Clearly, Funk does not impose blanket liability upon general contractors;[2] its express terms indicate that "a general contractor's responsibility will often depend on the nature of the risk and of the precaution or safeguard claimed to have been omitted." Id. at 101, 220 N.W.2d at 644. The gravamen of plaintiff's claim, in Funk language, is that he was engaged in his employment in a "common work area" (the excavation hole) which thereby imposed upon the defendant a duty "to guard against readily observable, avoidable dangers" (preventing overload of the defendant) that posed "a high degree of risk to a significant number of workmen" (the risk was shared by others). Id. at 104, 220 N.W.2d at 646.
 
 
 8
 In an effort to meet his burden, plaintiff points out that: five different companies were on the job site [Deposition of Kenneth Wilson, defendant's safety officer, at 4-5]; other companies' workers were present in some areas where the Hennes employees were working [Id. at 4-5, 14]; defendants urged some supervisory safety precautions including discussing proper rebar handling [Id. at 12, 19, 25-26, 47]; and defendants undertook general responsibility for safety at the job site [Depositions of James Shellenberger, defendant's safety director, at 5, and of Wayne DeLong, defendant's construction superintendent, at 4-5, 15]. Yet, all of this testimony does not create a genuine issue of material fact, because the import of the Funk standard is that general contractor liability is limited to certain types of dangers in common work areas. Indeed, the liability imposed in Funk was because Funk fell from a superstructure that was part of the common work area, was within the control of the defendant, and posed a risk to many other workers. Here, it is uncontroverted that the bundle of rebar was placed by the defendant in the excavation at a location that had been directed by the subcontractor's foreman [Deposition of William Guertin, plaintiff's union steward, at 54], that plaintiff was one of only four ironworkers that carried rebar [Id. at 9], and that plaintiff's counsel agreed with the district judge that the "only persons who were entitled and who would, for any conceivable purpose, have lifted rebar were the ironworkers that belonged to Hennes Erecting Company" [Transcript of Hearing on Motion for Summary Judgment, at 10].
 
 
 9
 Still, plaintiff argues for a spatial definition of the Funk qualification of general contractor liability for common work areas; he claims that "it is the construction site itself that is a common work area, not the particular location within the construction site" [Brief of Appellant, at 10 (emphasis in the original) ] and cites the court to two Michigan Court of Appeals cases construing Funk, viz., Erickson v. Pure Oil Corp., 72 Mich.App. 330, 249 N.W.2d 411 (1977) and Samhoun v. Greenfield Constr. Co., 163 Mich.App. 34, 413 N.W.2d 723 (1987). But, these cases, like Funk, impose liability upon a contractor only where a substantial number of employees of multiple subcontractors may be exposed to the risk.[3]
 
 
 10
 As a result, on the pleadings and facts before the court, it is unchallenged that no other subcontractors' employees were subject, nor could be subject, to the risk to which Lammie and his Hennes co-workers were subject in the hole at the excavation site. Thus, his injury did not arise in a "common work area" where there was "a high degree of risk to a significant number of workmen," the Funk standard--and the defendant is entitled to judgment on this issue as a matter of law.
 
 
 11
 Finally, in the course of oral argument before this court, Lammie urged an alternate theory based upon an older Michigan case, Hart v. Ludwig, 347 Mich. 559, 79 N.W.2d 895 (1956), which he did not brief here or in the district court.[4] Hart, a case which discusses the evolution of tort-arising-from-contract theory, posits the proposition of liability where someone, having agreed "to act, does so negligently. The basis of liability in such cases is the failure of the defendant to exercise care and skill in the performance itself." Hart, 347 Mich. at 564, 79 N.W.2d at 898. Lammie says that he was injured because of the plaintiff's breach of a contractual duty to maintain a safe work site, a duty that transcends Funk. But, Hart is inapposite to the case at bar because, inter alia, plaintiff has shown no contractual provision that the defendant had undertaken to insure against the risk involved here, a risk that was peculiarly a function of the subcontractor's work assignment practices. Therefore, the defendant is entitled to judgment on this issue as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 12
 Judgment affirmed.
 
 
 
 *
 The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The Supreme Court of Michigan has stated that, absent legislative instruction, whether there is a duty to avoid negligent conduct is a question of law, and the courts have the "responsibility to continue to develop or limit the development of that body of law." Moning v. Alfono, 400 Mich. 425, 436, 254 N.W.2d 759, 764 (1977). The plaintiff has not demonstrated that any enactments have altered the duty herein; accordingly, we apply the common law of that state
 
 
 [2]
 Lammie advances an even broader proposition that "the rule in Michigan is now that the contractor is 'generally' subject to tort liability to an employee of a subcontractor." Brief of Appellant, at 9-10, citing the dissenting opinion in Dagenhardt v. Special Machine & Engineering Co., 418 Mich. 520, 559, 345 N.W.2d 164, 181, and citing an intermediate appellate opinion, Yoakum v. Practical Home Builders, Inc., 55 Mich.App. 384, 388, 222 N.W.2d 251, 254 (1974). But, these are shorthand, if not wishful, characterizations of Funk, which speaks for itself and remains the controlling precedent
 
 
 [3]
 In Erickson, notes appellant, the court said that "[a]ll that is required is that two or more subcontractors will eventually work in the same area of the construction site." 72 Mich.App. at 337, 249 N.W.2d at 414. But, he fails to observe that the Erickson analysis is, in reality, a risk analysis--for the court went on to indicate that its rationale for reversing summary judgment for a defendant was that the workers of multiple subcontractors might "be subject to the same hazard." Id. This concept is at the heart of the Funk standard that liability is not imputed unless the dangers that are in the common work area involve "a high degree of risk to a significant number of workmen." Funk, 392 Mich. at 104, 220 N.W.2d at 646. Likewise, in Samhoun the Court of Appeals, in sustaining summary judgment for a contractor, not only distinguished its workplace analysis from the site in Funk "where many different subcontractors were at work," it also pointed out that "there was no danger which created a high degree of risk to a significant number of workers." Samhoun, 163 Mich.App. at 46, 413 N.W.2d at 729
 
 
 [4]
 It is well established that "[f]ailure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal .... and only those matters properly before the district court for summary judgment consideration are subject to appellate review." Denis v. Liberty Mutual Ins. Co., 791 F.2d 846, 848-49 (11th Cir.1986). Nonetheless, we briefly address Hart as Lammie had advanced a vague claim that the plaintiff, an intended third-party beneficiary, was injured because the defendant breached a duty of safety supervision arising under the government's contract with the defendant or the defendant's contract with Lammie's employer