*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES LOCKARD and MARY LOCKARD,

　　　　　　Plaintiffs-Appellants,

v

MAYCO INTERNATIONAL, LLC and ALPHA
TO OMEGA PROPERTIES, LLC,

　　　　　　Defendants-Appellees,

and

TEE DEE ENTERPRISES, LLC,

　　　　　　Defendant.

UNPUBLISHED
February 14, 2019

No.　341808
Macomb Circuit Court
LC No.　2016-002216-NO

Before:　MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM..

　　　　Plaintiffs, James Lockard and Mary Lockard,[1] appeal as of right the trial court's order granting summary disposition in favor of defendant, Mayco International, LLC ("Mayco"), pursuant to MCR 2.116(C)(10), and dismissing with prejudice all of plaintiffs' claims against defendants Mayco.[2]　We affirm.

## I.　BACKGROUND

---

[1] For purposes of this opinion, all references to "Lockard" shall refer to plaintiff James Lockard. Plaintiff Mary Lockard's connection to this case is by way of her derivative claim for loss of consortium.

[2] The trial court also dismissed with prejudice all of plaintiffs' claims against Tee Dee Enterprises, LLC and Alpha to Omega Properties LLC.

Plaintiffs' claims arise out of a fall that James Lockard sustained while working for a subcontractor, Macomb Mechanical, to charge a chiller on a mezzanine in Mayco's 188,000-square-foot factory, which Mayco had recently acquired and was in the process of renovating. Lockard stepped through a hole in a steel-grated floor on the mezzanine. Plaintiffs' complaint included claims for (1) active negligence, (2) premises liability, and (3) breach of duty owed by a general contractor in a common work area. Relevant to this appeal, the trial court granted Mayco's motion for summary disposition pursuant to MCR 2.116(C)(10), ruling that Mayco was not a general contractor and that the allegedly hazardous condition was open and obvious.

"This Court reviews de novo a circuit court's summary disposition ruling." *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). Mayco's motion was brought, and granted, pursuant to MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Urbain v Beierling*, 301 Mich App 114, 122; 835 NW2d 455 (2013).

> In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014) (citations omitted).]

A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "The court is not permitted to assess credibility, or to determine facts on a motion for summary [disposition]." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

## II. ACTIVE NEGLIGENCE

Plaintiffs argue that Mayco was not entitled to dismissal of their active negligence claim. We disagree.

### A. APPLICABLE LAW

Michigan courts have long distinguished between claims arising from negligence and claims premised on a condition of the land. *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001). A claim sounds in ordinary negligence when the injury results from "the overt acts of a premises owner on his or her premises." *Kachudas v Invaders Self Auto Wash, Inc*, 486 Mich 913, 914; 781 NW2d 806 (2010). "Active negligence exists where a defendant or his agents have created a dangerous condition. In that case, proof of notice is unnecessary." *Williams v Borman's Foods, Inc*, 191 Mich App 320, 321; 477 NW2d 425 (1991). A "plaintiff can raise a legitimate claim of active negligence by showing that [a] defendant negligently performed an act and that its negligent performance was likely to result in harm." *Johnson v A & M Custom Built Homes of West Bloomfield, LPC*, 261 Mich App 719, 725; 683 NW2d 229 (2004).

In contrast, a claim sounds in premises liability when the injury results from a condition on the land. *Kachudas*, 486 Mich at 914. In *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691-692; 822 NW2d 254 (2012), this Court explained:

> Courts are not bound by the labels that parties attach to their claims. *Manning v Amerman*, 229 Mich App 608, 613; 582 NW2d 539 (1998). Indeed, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams* (*On Reconsideration*), 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land. See [*James*, 464 Mich at 18-19]. In the latter case, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land. *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury. *James*, 464 Mich at 18-19.

## B. ANALYSIS

In plaintiffs' second-amended complaint, the heading for their first claim was styled, "COMPLAINT FOR ACTIVE NEGLIGENCE AND MISFEASANCE." But reading plaintiffs' complaint as a whole and looking beyond plaintiffs' section heading, it alleged that Lockard fell when he stepped into an uncovered hole on Mayco's premises. Regardless of the label used, Lockard's injury arose from an allegedly dangerous *condition* on Mayco's premises, namely, a hole in the floor. Although plaintiffs alleged that either Mayco, its employees, or its contractors caused the condition—specifically, by cutting the hole and failing to cover it—this Court in *Buhalis* explained that an allegation of active negligence "does not transform the claim into one for ordinary negligence." *Buhalis*, 296 Mich App at 692. When a plaintiff purports to allege both (1) an ordinary negligence claim that actually sounds in premises liability, and (2) a premises liability claim, the ordinary negligence claim should be dismissed. *Id.* Contrary to plaintiffs' argument on appeal, Mayco correctly argued below that the active negligence claim could not stand independently, as plaintiffs' complaint actually sounded in premises liability. Even though the trial court did not expressly address the active negligence portion of the second-amended complaint, because plaintiffs' claim sounded in premises liability, the claim was dismissed when the trial court granted Mayco's motion for summary disposition. See *id*.

In a related argument, plaintiffs attempt to avoid summary disposition of the active negligence claim by asserting that Mayco was not just the owner and premises possessor of the factory, but also was acting as the general contractor. Plaintiffs argue that its general contractor liability sounds only in active negligence, not premises liability, and thus is separate from any liability under the common-work-area doctrine. However, plaintiffs did not assert an active negligence claim against Mayco acting as a general contractor in their second-amended

complaint. Moreover, as noted *infra*, Mayco did not act as a de facto, or otherwise, general contractor.[3]

## III. PREMISES LIABILITY

Next, plaintiffs argue that summary disposition of their premises liability claim was improper because there is at least a question of fact regarding whether the hole in the mezzanine floor was open and obvious. We disagree.

## A. APPLICABLE LAW

In *Estate of Goodwin v Northwest Mich Fair Ass'n*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket Nos. 333963 & 335292) (footnote omitted); slip op at 16, this Court recently explained:

> "In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). "With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." [*Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012)]. Integral to a landowner's duty to an invitee is whether the defect in question is "open and obvious." *Id*. (quotation marks omitted). Absent special aspects, "[t]he possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461 (citation omitted). With regard to adult invitees, whether a danger is open and obvious is judged from an objective standard, considering "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. at 461.

## B. ANALYSIS

Plaintiffs' photographs taken immediately after the incident show the mezzanine—above ground level—with a hole in the steel-grated flooring, which is about the same length and width of a work boot. Piping can be seen running below the floor in the area of the hole and shows a distinct difference between the character of the flooring with the grating and without it. Although photographs show equipment near the hole on the mezzanine, nothing obstructs the view of the hole from above. Indeed, plaintiffs' own expert agreed that "a person standing next

---

[3] Because we conclude that the trial court properly dismissed plaintiffs' active negligence claim, given that it actually sounded in premises liability, we need not address whether a question of fact existed regarding whether Mayco or its employees caused the hazard.

to the hole could readily observe and avoid it." Lockard claimed that maneuvering around the hole was difficult because of the surrounding equipment, but the photographs show that a nearly two-foot-wide walkway allowed passage through the mezzanine, in front of the equipment and the hole. Moreover, a reasonably prudent person would look where he or she was going, particularly if the person expected a hazard. See *Bertrand v Alan Ford, Inc*, 449 Mich 606, 616; 537 NW2d 185 (1995) ("[A] reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety.").

Lockard claimed that, after the accident, he realized that the lighting was very poor on the mezzanine and there was a glare. But the view of the mezzanine from the photographs shows a well-lit space. Moreover, the grated flooring allows additional light to shine from the space below the mezzanine. Even if Lockard subjectively believed that the lighting was poor, he had been working on the mezzanine for four hours prior to the time that he fell. Nothing prevented him over those four hours from making an informed judgment and then proceeding with appropriate caution. See *Singerman v Muni Serv Bureau*, 455 Mich 135, 144; 565 NW2d 383 (1997) (opinion by WEAVER, J.) (a plaintiff's claim that poor lighting in a hockey rink prevented him from observing a hockey puck that hit him in the face was barred by the open and obvious doctrine because nothing prevented the plaintiff from realizing that the hockey rink was poorly lit).

Plaintiffs argue that the open and obvious doctrine "applicable in general premises liability cases does not apply in construction cases because the construction environment differs from a 'retail establishment,' 'parking lot,' 'residence,' and so on . . . ." Plaintiffs rely on *Ghaffari v Turner Constr Co*, 473 Mich 16, 22; 699 NW2d 687 (2005), in support of their argument. In that case, the Supreme Court noted:

> While the construction worker still bears the responsibility of carrying out his or her work in a reasonable and prudent manner, the worker will typically encounter more dangers of a more diverse character, and more distractions coming from more directions, than will persons shopping in retail establishments or walking in parking lots or visiting the residences of others, and will generally be less able to avoid a given hazard than the typical invitee or licensee, even if the hazard may be seen after the fact as open and obvious. [*Id.* at 28-29.]

But the Court also made that distinction in *Ghaffari* regarding the issue of whether the open and obvious doctrine should preclude a common-work-area claim against a general contractor. That question is different from the question here which involves whether the open and obvious doctrine should bar a premises liability claim against the premises possessor of a construction site who, as analyzed *infra*, is not a general contractor. In *Ghaffari*, even though the court concluded that the open and obvious doctrine should not apply in the former scenario, it repeatedly stated that it does apply in the latter.

> As our analysis today attempts to make clear, the two doctrines at issue are independent of and distinct from one another. The open and obvious doctrine serves as an "integral part of the definition" of the duty a premises possessor owes invitees, while the common work area doctrine "is an exception to the general rule of nonliability for the negligent acts of independent subcontractors and their

employees," under which "an injured employee of an independent subcontractor [may] sue the general contractor . . . ." The two doctrines involve completely distinct sets of plaintiffs and defendants, and therefore . . . different sets of duties. [*Id*. at 29 (citations omitted; alterations in original).]

Moreover, as further explained below, the common-work-area exception does not apply in the instant matter because there is no question of fact that Mayco did not retain sufficient control to be considered a general contractor.

Therefore, plaintiffs' argument—that if the common-work-area exception applies, then the open and obvious doctrine does not—necessarily fails. See *id*.

## IV. COMMON WORK AREA

Finally, plaintiffs argue that a question of fact exists regarding their common-work-area claim, and therefore, the trial court erred by dismissing it. We disagree.

## A. APPLICABLE LAW

"As a general rule, when an owner or general contractor hires an independent contractor to perform a job, the owner or general contractor may not be held liable in negligence to third parties or employees of the independent contractor." *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 72; 600 NW2d 348 (1999). Normally, the independent contractor manages job safety. *Id*. "There are, however, certain circumstances under which an owner or general contractor may be held liable for either the independent contractor's negligence or for its own negligence." *Id*. In *Candelaria*, 236 Mich App at 73-74 (footnote omitted), this Court provided the following summary of the law:

> [T]he owner or general contractor's retention of supervisory control provides the basis for the imposition of an independent duty on the part of the owner or general contractor to exercise its retained control with reasonable care. The focus is not on the legal status of the relationship between the owner or general contractor and the independent contractor, but rather on the manner in which the owner or general contractor acts or fails to act in relation to the safety of the injured party. . . . The seminal case in Michigan regarding the doctrine of retained control is *Funk* [*v Gen Motors Corp*, 392 Mich 91, 101; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29; 323 NW2d 270 (1982)], *supra*, in which our Supreme Court reasoned that a landowner or general contractor could be "held responsible for its *own* negligence in failing to implement reasonable safety precautions," where its "retained and exercised" control over a project was sufficient to create a corresponding duty to implement such precautions. *Funk*, [392 Mich] at 108 (emphasis added); see also *Plummer* [*v Bechtel Constr Co*, 440 Mich 646,] 669[; 489 NW2d 66 (1992) (opinion by BOYLE, J.).]

To establish liability of an owner or general contractor under the theory of retained control in a common work area, a plaintiff must prove: "(1) that the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily

-6-

observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 57; 684 NW2d 320 (2004).

## B. ANALYSIS

Plaintiffs have failed to establish a question of fact whether Mayco retained sufficient control of the project to be held liable under the common-work-area doctrine. In *Candelaria*, 236 Mich App at 75-76, this Court explained:

> There is no specific test to determine the degree of control sufficient to create an independent duty of care in an owner or general contractor under the doctrine of retained control, and the descriptions are somewhat varied. See *Phillips v Mazda Motor Mfg* (*USA*) *Corp*, 204 Mich App 401, 408; 516 NW2d 502 (1994) ("There must be a high degree of actual control; general oversight or monitoring is insufficient."); *Burger v Midland Cogeneration Venture*, 202 Mich App 310, 317; 507 NW2d 827 (1993) ("[T]he owner must retain at least partial control and direction of the construction work, beyond safety inspection and general oversight."); [*Samodai v Chrysler Corp*, 178 Mich App 252, 256; 443 NW2d 391 (1989)] ("The requisite nature of this standard requires that the owner retain at least partial control and direction of actual construction work, which is not equivalent to safety inspections and general oversight."); *Miller v Great Lakes Steel Corp*, 112 Mich App 122, 127; 315 NW2d 558 (1982) (explaining that "some sort of substantive control must be maintained by the owner over the contractor's work in order to render the owner liable for an injury to a contractor's employee"); [*Erickson v Pure Oil Corp*, 72 Mich App 330, 339; 249 NW2d 411 (1976)] (holding that an owner's mere retention of the contractual right to terminate employment of those not in compliance with its rules and regulations was not sufficient). Again, the Supreme Court's reasoning in *Funk*, [392 Mich at 108], is instructive:

>> [Defendant's representative] and his assistants did more than observe whether the contract was being properly performed. In many instances, *what they said, or left unsaid, determined how the work would be performed*. In the area of job safety their knowing acquiescence in nonperformance *encouraged, if not legitimized*, the derelictions of the sub- and general contractors. Having assumed a dominant role in this construction job, [Defendant] can properly be held responsible for the failure to implement adequate safety precautions. [*Funk*, [392 Mich at 108] (emphasis added).]

> Although formulations such as "high degree of actual control" and "dominant role" suggest a fact-specific inquiry, one clear rule can be gleaned from *Funk* and its progeny. At a minimum, for an owner or general contractor to be held directly liable in negligence, its retention of control must have had some *actual effect* on the manner or environment in which the work was performed.

This Court concluded that a directed verdict of the common-work-area claim was proper in *Candelaria*, in part, because the general contractor did not retain sufficient control over the performance of the work to be held liable. *Candelaria*, 236 Mich App at 77-78. Viewing the facts in a light most favorable to the plaintiff, the evidence did not permit a finding that the control retained by the general contractor "had any effect on the manner or environment in which the work was performed." *Id.* at 77. If the general contractor had come to the work site, it could have stopped work if it disagreed with the subcontractor's performance. *Id.* But, the record demonstrated that nobody representing the general contractor actually ever went to the site or directed the manner in which the work was to be performed. *Id.* at 77-78. "Similarly, while [the general contractor's] representative acknowledged, without explication, that [the general contractor] had 'control' over [the subcontractor's] work with respect to correcting 'unsatisfactory' work or behavior, there was no evidence that this control was ever exercised in any way." *Id.* at 78. Thus, the panel in *Candelaria* concluded that the trial court erred by finding that there was sufficient evidence to present the issue to the jury. *Id.*

The facts of this case parallel those in *Candelaria*. The record shows that the general manager of Mayco's factory assigned Mayco's automation and maintenance manager, John Westermen, to purchase a chiller and any plumbing required to install the chiller on the mezzanine. In addition, Westermen hired some subcontractors, including Blue Water Rigging and Summit Electric, to install those products. Although the general manager testified that he was responsible for safety in the factory, and Westermen testified that he was responsible for determining if the work done by Blue Water Rigging was done properly, there are no facts in the record that these employees, or anyone else working for Mayco, actually exercised control over the work done by the subcontractors. Rather, Ronald Mitchell, the owner of Blue Water Rigging, testified that Westermen hired him to install the chiller and they generally discussed the project, but Mitchell used his expertise to determine "how the stuff's got to work" and "where it's got to end up." Mitchell testified that he never saw anyone from Mayco inspecting his work. Westermen testified that he never went on the mezzanine and he did not know anyone from Mayco who walked on the mezzanine to check the subcontractors' work or look for safety hazards. Mayco did not even start the chiller independently; rather, the dealer who sold Mayco the equipment sent a subcontractor, Smardt, to complete the startup. Although Mayco purchased the chiller and its parts, and hired the subcontractors to install that equipment, there is no evidence that Mayco's behavior had any actual effect on the manner or environment in which the work on the chiller was performed. Accordingly, there is no fact issue whether Mayco retained sufficient control over the performance of the work to be held liable under the common-work-area exception. See *id.* at 77-78.

## IV. CONCLUSION

We affirm the trial court's grant of summary disposition in favor of defendant Mayco.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan